Paul Buchanan, OSB No. 940551
E-mail: paul@baaslaw.com
Kelly Fisher, OSB No. 065878
E-mail: kelly@baaslaw.com
BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP
921 SW Washington St., Suite 516
Portland, OR 97205
Telephone: (503) 974-5015
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| CASEY R. INGELS,<br><br>    Plaintiff,<br><br>v.<br><br>BECKLIN HOLDINGS, INC., dba ECS COMPOSITES, INC., and DENNIS STERLING BECKLIN, an individual,<br><br><br>    Defendants. | Civil No. 3:22-cv-00459-IM<br><br>**DECLARATION OF PAUL BUCHANAN IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND** |

I, PAUL BUCHANAN, under penalty of perjury, declare as follows:

1.      I am a partner in the firm of Buchanan Angeli Altschul & Sullivan LLP and have principal responsibility for representation of the plaintiff in this action, Casey R. Ingels.  I base this declaration on my own personal knowledge and, if called, could competently testify to the facts stated herein based on my personal knowledge.

2.      Beginning in mid-February 2022, I was in discussions with Jesse Cripps, of the

Gibson Dunn & Crutcher firm in Los Angeles, who is representing the defendants in connection with claims that my firm had set forth in a draft Complaint.  The claims in the draft Complaint were substantially similar to those that are in the Complaint we ultimately filed and concerned the termination of Mr. Ingels' employment as Chief Executive Officers of Beckin Holdings, Inc., dba ECS Composites Inc. ("ECS").  After reaching a conclusion that the negotiations were not likely to be successful in reaching a pre-litigation resolution, on March 22, 2022, my office filed our Complaint on behalf of Mr. Ingels in Multnomah County Circuit Court for the State of Oregon.  This is the Complaint that subsequently was removed to this Court.

3.      At 2:56 p.m. on the day of the filing, March 22, 2022, I emailed a copy of the Complaint to Mr. Cripps, copying the local attorney who Mr. Cripps indicated he had retained as local counsel for the defendants, Darin Sands of the firm Bradley Bernstein Sands LLP in Portland, Oregon.  I ended that email by stating: "Please let me know if you will accept service on behalf of the defendants."  A true copy of this email is attached as Exhibit 1.  I received no response to that email.

4.      After hearing no response to that email, I began to consider using other forms of service and, in connection with that effort, it was brought to my attention that the registered agent for Becklin Holdings, Inc. was not a current employee of the Company.

5.      I followed up the next day at 1:30 p.m., March 23, 2022, with another email to defense counsel providing a file stamped copy of the Complaint and asking once again whether counsel for defendants would accept service on behalf of their clients.  A true copy of this email is attached as Exhibit 2.  Once again, counsel for defendants did not respond to my email.

6.      On that same day, March 23, 2022, defendants counsel filed papers in this Court and in the Circuit Court of the State of Oregon seeking to remove the case to federal court.  This Court's filing is not time stamped, however, the state court filing was at 4:09 p.m.

7.    After receiving no response from defendants' counsel to my two emails about accepting service, I completed office service on both defendants through use of a process server by 12:14 p.m. on March 24, 2022.

8.    For the Court's convenience, attached to this declaration as Exhibits 3-14 are true copies of all district court cases cited in plaintiff's Motion to Remand that only have Westlaw citations.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.


Dated: April 15, 2022

BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP

*s/Paul Buchanan*
Paul Buchanan, OSB No. 940551
E-mail: paul@baaslaw.com
Kelly Fisher, OSB No. 065878
E-mail: kelly@baaslaw.com
Phone: (503) 974-5015
Fax: (971) 230-0337

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing DECLARATION OF PAUL BUCHANAN IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND on the following attorney(s), party, or parties:

| | |
|---|---|
| Bradley Bernstein Sands LLP | Gibson, Dunn & Crutcher LLP |
| Darin Sands, OSB No. 106624 | Jesse Cripps, *pro hac vice forthcoming* |
| 1425 SW 20th Ave, Suite 201 | 333 South Grand Avenue |
| Portland, OR 97201 | Los Angeles, CA 90071 |
| 503-734-2480 | 213-229-7792 |
| dsands@bradleybernsteinllp.com | JCripps@gibsondunn.com |

*Attorneys for Defendants Becklin Holdings, Inc. and Dennis Sterling Becklin*

by causing to be delivered/served on the date and in the method(s) forth below:

☒    By **CM/ECF System**.

☐    By **regular, first-class mail**, via the United States Post Office, by placing a true copy in a sealed envelope with postage fully prepaid thereon, addressed to the above individual(s) at such individual's last known address.

☐    By **emailing** a true copy to the email address(es) listed above.

☐    By **faxing** a true copy to the above individual(s) at the facsimile number(s) listed above.

☐    By **hand-delivering** or leaving a true copy at the address(es) of the above individual(s).

DATED: April 15, 2022

BUCHANAN ANGELI ALTSCHUL & SULLIVAN, LLP

/s/Paul Buchanan
Paul Buchanan, OSB No. 940551
E-mail: paul@baaslaw.com
Kelly Fisher, OSB No. 065878
E-mail: kelly@baaslaw.com
Telephone: (503) 974-5020
Fax: (971) 230-0337

Attorneys for Plaintiff

| From: | Paul Buchanan |
|---|---|
| To: | Jesse A. Cripps |
| Cc: | Emily Caplinger; Eric English; Andrew Altschul; dsands@bradleybernsteinllp.com |
| Subject: | Ingels v. Becklin |
| Date: | Tuesday, March 22, 2022 2:56:03 PM |
| Attachments: | Ingels v. Becklin - Complaint (1).pdf |

Hi Jesse,

I wanted to let you know that we went ahead and filed our Complaint today. We sensed that there wasn't a willingness to have a productive discussion about resolution. What we have heard instead are threats that we believe are a continuation of the retaliation that began with Mr. Ingels's termination, as well as promises of information by dates that have kept slipping backwards. So we decided to move forward.

We're still happy to have a discussion and even to mediate on Monday as planned, if you're client is interested in a good faith discussion of resolution. If not, let's see what we learn in discovery and where that takes us.

Please let me know if you will accept service on behalf of the defendants. -Paul


Paul Buchanan
**Buchanan Angeli Altschul & Sullivan LLP**
503-707-5552 (Mobile)
503-974-5020 (Office)

Exhibit 1
Page 1 of 1

| | |
|---|---|
| **From:** | Paul Buchanan |
| **To:** | Jesse A. Cripps |
| **Cc:** | Emily Caplinger; Andrew Altschul; dsands@bradleybernsteinllp.com |
| **Subject:** | RE: Ingels v. Becklin |
| **Date:** | Wednesday, March 23, 2022 1:30:32 PM |
| **Attachments:** | Ingels v. Becklin - Complaint (1).pdf |
| | image001.jpg |

Hi Jesse,

Attached is a file stamped copy of the Complaint.  Please do let me know about service as I see from the Oregon Secretary of State web site that none of the individuals listed as registered agents for Becklin Holdings and ECS are current employees.  I can do office service of course for both the corporation and Mr. Becklin but would prefer not to put everyone through that if I don't have to.  I also have discovery that I'd like to send out next week but would prefer with that too to send that your way and not to serve it at the company.  Given that there's 45 days to respond to discovery at this stage in the proceedings, I'd like to see if we can get Mr. Becklin's deposition scheduled for either the week of June 6 or June 13 if you and your client are available then.  Please just let me know if there are dates in there that will work on your side.  Or if another week in June is better, let me know that too.

I look forward to hearing from you soon. -Paul


Paul Buchanan
**Buchanan Angeli Altschul & Sullivan LLP**
**Employment Lawyers**
921 SW Washington, Suite 516
Portland, OR 97205
Direct: (503) 974-5020
Mobile: (503) 707-5552

 **@PaulCBuchanan**

Licensed in California, Oregon and Washington.  This email may contain or attach material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  In the event of an inadvertent transmission, this email should be immediately deleted by the recipient and should not be reviewed.

Exhibit 2
Page 1 of 1

2022 WL 909963
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

BANK OF AMERICA, N.A., As Successor By
Merger to BAC Home Loans Servicing, LP,
Plaintiff,
v.

FIDELITY NATIONAL TITLE GROUP, INC.;
Chicago Title Insurance Company; Chicago Title of
Nevada, Inc.; Fidelity National Title Agency of
Nevada, Inc.; Ticor Title of Nevada, Inc.; Doe
Individuals I through X; and Roe Corporations XI
through XX, inclusive, Defendants.

Case No. 2:21-cv-00353-KJD-NJK
|
Signed 03/28/2022

**Attorneys and Law Firms**

Christina Miller, Darren T. Brenner, Lindsay Dragon,
Wright, Finlay & Zak, Las Vegas, NV, for Plaintiff.

Scott E. Gizer, Sophia Shunwan Lau, Early Sullivan
Wright Gizer & McRae LLP, Gary L. Compton, Las
Vegas, NV, Kevin Samuel Sinclair, Sinclair Braun LLP,
Encino, CA, Michael R. Merritt, McCormick Barstow,
Las Vegas, NV, for Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO
REMAND**

Kent J. Dawson, United States District Judge

**\*1** Before the Court are Plaintiff's Motion to Remand
(ECF #7) and Motion for Attorney Fees (ECF #8).
Defendant responded in opposition (ECF #24) to which
Plaintiff replied (ECF #25).

I. Background

On April 23, 2021, the parties stipulated to stay this action
pending the appeal of a similar case. (ECF #12). The
Ninth Circuit issued its ruling on the appeal on November
5, 2021. Wells Fargo Bank, N.A. v. Fidelity Nat'l Title
Ins. Co., No. 19-17332, 2021 WL 5150044 (9th Cir. Nov.
5, 2021). The parties have not requested that the stay be
lifted but have filed their response and reply to the instant
motion after the Ninth Circuit's decision. As such, the
Court lifts the stay to rule on the motion. Dependable
Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059,
1066 (9th Cir. 2007) ("[A] district court possesses the
inherent power to control its docket and promote efficient
use of judicial resources.").

This is a breach of contract and insurance bad faith claim.
(ECF #7, at 2). Plaintiff Bank of America, N.A. as
successor by merger to BAC Home Loans Servicing, LP
("BANA") filed the action in the Eighth Judicial District
Court of Nevada on March 1, 2021. (ECF #1-1, at 59).
That same day, Defendant Chicago Title Insurance
Company ("Chicago Title") removed the action to federal
court. (ECF #1, at 5). Chicago Title removed the action
based on diversity jurisdiction. Id. at 2. Chicago Title is a
Florida corporation with its principal place of business in
Florida; Fidelity National Title Group ("Fidelity") is
alleged to be a Delaware corporation with its principal
place of business in Florida; Chicago Title of Nevada
("Chicago Nevada"), Fidelity National Title Agency of
Nevada ("Fidelity Nevada"), and Ticor Title of Nevada
("Ticor Nevada") are all Nevada corporations with their
principal place of business in Nevada. Id. BANA is
believed to have its principal place of business in North
Carolina. Id. at 3.

BANA is the beneficiary of several deeds of trust
encumbering real property throughout Nevada. (ECF #7,
at 3). Each of the properties was foreclosed on by the
homeowners' association ("HOA") and sold to a third
party. Id. BANA alleges that it, or its predecessor, entered
into contractual relationships with Chicago Title and
either Chicago Nevada, Fidelity Nevada, or Ticor Nevada
to insure the Deed of Trust in superior position to
competing liens, including the HOA's liens. Id. BANA
then submitted claims to Chicago Title under the
insurance policy, but the claims were denied. Id. at 4. This
led to a multitude of lawsuits being filed by both banks
and buyers of property at the HOA foreclosure sales. Id.
Now, BANA seeks to recover its remaining losses and
other damages. Id.

There are many similar actions currently being litigated in
Nevada and this issue of snap removal has become a
common question. To date, six judges in the District of

Exhibit 3
Page 1 of 5

Nevada have ruled on the issue.[1] Five, including this Court, have found that snap removal is improper and remanded the cases to state court, while one judge has denied remand, ruling that the snap removal is an acceptable practice according to the plain language of the statute.[2] The Court joins the majority of the judges in the District and finds that Defendant's snap removal prior to service was improper and the forum defendant rule requires a remand to state court.


## II. Legal Standard

**\*2** Federal courts are courts of limited jurisdiction. *See* U.S. CONST. art. III, § 2, cl. 1; *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Accordingly, there is a strong presumption against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). A defendant may remove any civil action from state court when the federal district court has original jurisdiction. 28 U.S.C. § 1441(a). A diversity case cannot be removed if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* at § 1441(b)(2). Courts strictly construe the removal statute against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to right of removal in the first instance." *Gaus*, 980 F.2d at 566. The removing party bears the burden of establishing federal jurisdiction. *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2007).

Removal based on diversity jurisdiction requires complete diversity, meaning "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). However, when "determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).


## III. Analysis

Chicago Title argues that the plain language of the removal statute permits removal of this action. Chicago

Title focuses on the language of the statute, which states that diversity actions may not be removed "if any of the parties in interest **properly joined and served** as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). This is known as the forum defendant rule. Chicago Title argues that because it removed the action prior to any defendant being served, the forum defendant rule does not apply. Additionally, Chicago Title argues that BANA fraudulently joined twenty-two claim denials to defeat diversity. According to Chicago Title, BANA should have filed separate lawsuits for each of the denied claims. If it had, then eight of the claims would not have a local defendant and would defeat removal. Chicago Title also argues that federal question jurisdiction exists because BANA is not the true party in interest. It argues that BANA does not have standing to sue because BANA is merely the servicer of the loans and Freddie Mac is the insured. With Freddie Mac as the actual party in interest, federal question jurisdiction exists, and the diversity question is irrelevant. BANA disagrees with each argument, arguing that it is an insured, that the joinder rules encourage judicial economy rather than splitting up the twenty-two denied claims into separate lawsuits, and that snap removal promotes gamesmanship by defendants and undermines the purpose of the forum defendant rule.


### A. The Forum Defendants are Properly Joined

Chicago Title argues that BANA fraudulently joined twenty-two separate claims to defeat diversity. It asks the Court to retain jurisdiction of eight of the claims and remand the other 14 back to state court. In general, a "party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." FED. R. CIV. P. 18(a). Parties may be permissively joined as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." *Id.* at 20(a)(2). If the alleged fraudulent claims do not arise out of the same transaction or occurrence and do not contain a common question of law or fact, then they cannot be permissively joined.

**\*3** This action focuses on denied claims that involve multiple properties and multiple defendants. The Ninth Circuit has indicated that such claims can arise out of the same transaction or occurrence and contain a common

Exhibit 3
Page 2 of 5

question of law or fact. In a case involving the purchase of properties in HOA foreclosure sales, it stated that "the purchase of nine Nevada properties in homeowners' association foreclosure sales by three interconnected real estate development corporations constituted a 'series of transactions or occurrences.' " Fed. Housing Fin. Agency v. Las Vegas Dev. Grp., LLC, No. 20-15658, 2021 WL 5359593, at *1 (9th Cir. Nov. 17, 2021). The real estate development companies were interconnected, which likely weighed in favor of the court's finding that they constituted a series of transactions or occurrences. Here, there are multiple claims for multiple properties that were denied. There is only one plaintiff, and all the defendants are interconnected, as each claim was printed on the same form and the defendants are alleged to be controlled by Fidelity. The consistent denial of the claims that were executed on the same forms is sufficient to constitute a series of transactions or occurrences.

Fed. Housing also contained a common question of law and fact, including whether a statute preserved the plaintiff's property interests after the foreclosure sales. Id. Litigating the claims together would answer that question for all the defendants. BANA argues that there are questions of law or fact common to all defendants that would be answered in litigating these claims together. Those questions include whether the forms used by each defendant provided coverage, whether Fidelity instructed the other defendants to represent to potential clients that the forms provided coverage, and whether Fidelity adopted a coverage position that was at odds with its manuals to wrongfully deny all the claims. (ECF #25, at 12). Because the defendants are interconnected, controlled by Fidelity, and used the same forms, the Court agrees that there exist questions common to all defendants.

Because the claims satisfy Rule 20(a), they were permissively joined and BANA may litigate the actions collectively. Additionally, the Court sees no reason to retain jurisdiction of eight of the claims. Such a ruling would discourage judicial economy and require multiple lawsuits. Cuprite Mine Partners, LLC v. Anderson, 809 F.3d 548, 552 (9th Cir. 2015) ("Permissive joinder is to be liberally construed to promote the expeditious determination of disputes, and to prevent multiple lawsuits.").

## B. Federal Question Jurisdiction Does Not Exist

Chicago Title argues that federal question jurisdiction exists because Freddie Mac is the real party in interest and district courts have original jurisdiction over "all civil actions to which [Freddie Mac] is a party." 12 U.S.C. § 1452(f). According to Chicago Title, BANA is only the servicer of at least four of the loans mentioned in the suit. The owner of the loans is Freddie Mac. As such, Freddie Mac, not BANA, is the real party in interest as to the claims on the four loans that Freddie Mac owns, which gives the court federal question jurisdiction and makes the diversity issue irrelevant. Chicago Title recognizes that the Supreme Court has demonstrated that district courts need not look beyond the four corners of the complaint to assess whether it has jurisdiction. See Lincoln Property Co. v. Roach, 546 U.S. 81, 93 (2005). Instead, Chicago Title argues that BANA does not have standing to bring the claims for the loans owned by Freddie Mac. Chicago Title adds that "BANA's lack of standing is readily discernible from the facts in the Complaint." (ECF #24, at 18). The Court disagrees.

BANA alleges in its complaint that it is the beneficiary of each Deed of Trust and thus the insured under those policies. Federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). The complaint does not clearly establish federal question jurisdiction. The Court will adhere to the Supreme Court's guidance and not look beyond the four corners of the complaint to determine whether federal question jurisdiction exists. If Chicago Title wishes to challenge BANA's standing to bring a cause of action on the loans it alleges BANA merely services, it may do so in a motion to dismiss.

## C. Chicago Title's Snap Removal was Improper

**\*4** Chicago Title argues that its snap removal is a valid means of avoiding the forum defendant rule. It urges the Court to follow the appellate courts that have reviewed § 1441(b)(2) and found the statute allows the tactic. BANA argues that allowing snap removal would contravene the statute's purpose. Both sides acknowledge that the Ninth Circuit has yet to review the specific question. The Courts in this District that have reached the question have almost uniformly held that 'snap removal' is improper under 28 U.S.C. § 1441(b)(2). Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp., Inc., 532 F.Supp.3d 1004, 1010–11 n.3 (D. Nev. 2021) (collecting cases).[3]

When interpreting a statute, the Court looks first to the

Exhibit 3
Page 3 of 5

Bank of America, N.A. v. Fidelity National Title Group, Inc., Slip Copy (2022)

2022 WL 909963

plain language of the statute to discern congressional intent. See, e.g., Zuress v. Donley, 606 F.3d 1249, 1252–53 (9th Cir. 2010). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, (2000)) (internal quotation marks omitted). The court "may not adopt a plain language interpretation of a statutory provision that directly undercuts the clear purpose of the statute." Albertson's, Inc. v. C.I.R., 42 F.3d 537, 545 (9th Cir. 1994).

Some appellate courts have determined that the "properly joined and served" language in § 1441(b)(2) renders the statue clear and unambiguous, allowing snap removal before any defendant is served. However, not all courts agree. Many judges in the District reason that the word "any" in "any of the parties in interest properly joined and served" necessarily means that the statute assumes one party has been served. 28 U.S.C. § 1441(b)(2) See Wells Fargo Bank, N.A. v. Old Republic Title Ins. Grp., Inc., No. 2:20-cv-00461-JCM-NJK, 2020 WL 5898779, at *2 (D. Nev. Oct. 5, 2020). The fact that reasonable jurists differ on the statute's language evidences its ambiguity. Whether the language is ambiguous or not, Chicago Title's interpretation would render the forum defendant rule impotent.

The purpose of the removal power is to "protect non-forum litigants from possible state court bias in favor of forum-state litigants." Gentile v. Biogen Idec, Inc., 934 F.Supp.2d 313, 319 (D. Mass. Feb. 21, 2013). Forum defendants are not at such a risk and their presence "presumably mitigates concerns of state-court bias toward the plaintiff." HSBC Bank, 508 F.Supp.3d at 789. The language regarding a defendant who is "properly joined and served" was added to the removal statute in 1948. Gentile, 934 F.Supp.2d at 319. The Gentile court's review of Supreme Court precedent at that time "suggests the purpose of the 'properly joined and served' language was to prevent plaintiffs from defeating removal through improper joinder of a forum defendant," not to give defendants a loophole to avoid the forum defendant rule. Id. at 319–20. Snap removal prior to service does not aid in preventing the defeat of removal through improper joinder.

The Court finds that adopting Chicago Title's interpretation of the statute would "undercut the clear

purpose" of the forum defendant rule and encourage defendants to hijack a plaintiff's choice of forum by racing to remove prior to service. Albertson's, Inc., 42 F.3d at 545. The Court will not apply the statute in a way that would "eviscerate the purpose of the forum defendant rule." Mass. Mut. Life Ins. Co. v. Mozilo, 2012 WL 11047336, *2 (C.D. Cal. June 28, 2012) (citation omitted). By remanding to state court, the Court "provides some measure of protection for a plaintiff's choice of forum" while interpreting the statute in favor of remand, as required. HSBC Bank, 508 F.Supp.3d at 789 (quoting Gentile, 934 F.Supp.2d at 319); Gaus, 980 F.2d at 566.

### D. BANA is not Entitled to Attorney's Fees

**\*5** 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision to award attorney fees is left to the discretion of the court. Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005). "[A]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only [when] the removing party lacked an objectively reasonable basis for seeking removal." Martin, 546 U.S. at 136. Therefore, courts in the Ninth Circuit assess the clarity of the relevant law to determine whether there was an objectively reasonable basis for removal. See Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1066 (9th Cir. 2008) ("[T]he test is whether the relevant law clearly foreclosed the defendant's basis of removal.").

BANA argues that Chicago Title has engaged in jurisdictional gamesmanship removing every title insurance case immediately after it is filed. BANA highlights the consensus among the District's judges that the tactic contorts the meaning and purpose of the removal statue. However, the propriety of snap removal is a contested issue with supporting caselaw that the Ninth Circuit has not ruled on. Because Chicago Title had an objectively reasonable basis for removal, the Court declines to award BANA the fees and costs it incurred because of the removal.

### IV. Conclusion

Exhibit 3
Page 4 of 5

2022 WL 909963

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Remand (ECF #7) is **GRANTED.**

IT IS FURTHER ORDERED that Plaintiff's Motion for Attorney Fees (ECF #8) is **DENIED**.

**All Citations**

Slip Copy, 2022 WL 909963

## Footnotes

1    See Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp., Inc., 532 F.Supp.3d 1004, 1010–11 n.3 (D. Nev. 2021); U.S. Bank Tr. Nat'l Ass'n v. Fidelity Nat'l Title Grp., Inc., No 2:20-cv-02068-JCM-VCF, 2021 WL 223384 (D. Nev. Jan. 22, 2021); HSBC Bank USA, Nat'l Ass'n as Tr. for Certificateholders of ACE Secs. Corp. Home Equity Loan Tr., Series 2007-MW1, Asset-Backed Pass-through Certificates v. Fidelity Nat'l Title Grp., Inc., 508 F.Supp.3d 781 (D. Nev. 2020); Wells Fargo Bank, N.A. as Tr. of Holders of Harborview Mortg. Loan Tr. Mort. Loan Pass-through Certificates, Series 2006-12 v. Fidelity Nat'l Title Grp., Inc., No. 2:20-cv-01849-APG-NJK, 2020 WL 7388621 (D. Nev. Dec. 15, 2020); Deutsche Bank Nat'l Tr. Co. v. Fidelity Nat'l Title Grp., Inc., No. 2:20-cv-01606-APG-BNW, 2020 WL 7360680 (D. Nev. Dec. 15, 2020); Sparks v. Mamer, No. 2:20-cv-0661-KJD-VCF, 2020 WL 6820796 (D. Nev. Nov. 20, 2020).

2    See U.S. Bank, N.A. as Tr. to Wachovia Bank Nat'l Assoc. v. Fidelity Nat'l Title Grp., Inc., No. 2:21-cv-00339-GMN-VCF (D. Nev. Nov. 29, 2021).

3    One case disagrees with the other courts in the District and ruled that remand was improper. U.S. Bank, N.A. as Tr. to Wachovia Bank Nat'l Assoc. v. Fidelity Nat'l Title Grp., Inc., No. 2:21-cv-00339-GMN-VCF (D. Nev. Nov. 29, 2021).

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 3
Page 5 of 5

Burnett v. Tufguy Productions, Inc., Not Reported in Fed. Supp. (2010)

2010 WL 11578884

2010 WL 11578884
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

Michael BURNETT, Plaintiff,
v.
TUFGUY PRODUCTIONS, INC. et al.,
Defendants.

2:08-cv-01335-RCJ-RJJ
|
Signed 02/10/2010

**Attorneys and Law Firms**

Cory J. Hilton, Hilton English & Associates, Las Vegas, NV, David Mitchell Garrett, Garrett Law Center PLLC, Tulsa, OK, for Plaintiff.

Keith A. Weaver, Lewis Brisbois Bisgaard & Smith, Las Vegas, NV, for Defendants.

**ORDER**

Robert C. Jones, United States District Judge

**\*1** This case arises out of a spinal injury sustained by Plaintiff during an "ultimate fighting" show. Pending before the Court is Defendant National Union Fire Insurance Co. of Pittsburgh, PA's Motion to Dismiss Action for Failure to Prosecute Claim and Comply with Court's Order (FRCP 41(b)) (#63). Defendant Tufguy Productions, Inc. has joined the Motion (#64). Plaintiff has filed a Response (#68), and Defendant has filed a Reply (#71). For the reasons given herein, the Court denies the Motion (#63). The Court solicited blind briefs from the parties on the issue of remand. For the reasons given herein, the Court will not remand.

**I. FACTS AND PROCEDURAL HISTORY**
According to the Second Amended Complaint ("SAC"),

on or about June 10, 2006, Plaintiff Michael Burnett participated in Defendant Tufguy Production, Inc.'s ("Tufguy") "Ultimate Fighter 4" television show. (#27 ¶ 3). As a result—presumably during a fight, although not explicitly so stated in the SAC—Plaintiff suffered a spinal injury. (*Id.*). At that time, Plaintiff was insured under an accident and health insurance policy issued by Defendant National Union Fire Insurance Co. of Pittsburgh, PA ("NUFIC"), Policy No. 009109179 ("the Policy"). (*Id.* ¶ 7).[1] Plaintiff alleges that although he has fulfilled all conditions precedent to NUFIC's performance under the Policy, NUFIC has failed to make a reasonable offer and payment under the Policy in connection with his injuries, (*id.* ¶ 9), and that NUFIC, despite numerous requests, has failed to even provide Plaintiff with a true and correct copy of the Policy, (*id.* ¶ 10).

Plaintiff sued Defendants Tufguy and American International Group, Inc. ("AIG") in the District Court of Clark County, Nevada. (#1, Ex. A). AIG, who has since been dismissed as a party, removed to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (#1). Plaintiff is an Oklahoma resident. Tufguy is a California corporation doing business in Nevada, with its principal place of business not alleged. (#27 ¶ 1). Defendant Ultimate Fighting Productions, LLC, ("UFP") is a Nevada limited liability company with its principal place of business in Nevada. (*Id.*). AIG is a Delaware corporation with its principal place of business in New York. Since removal, Plaintiff has added Zuffa, LLC, d.b.a. Ultimate Fighting Championship ("Zuffa"), as a Defendant. (*Id.*). Zuffa is a Nevada limited liability company. (*Id.*). The Second Amended Complaint ("SAC") lists three causes of action: (1) negligence (against Tufguy and UFP), (*id.* ¶ 3); (2) breach of contract (against NUFIC, (*id.* at 3); and (3) breach of the covenant of good faith and fair dealing (against NUFIC), (*id.* at 4).

**II. LEGAL STANDARDS**

**A. Lack of Subject Matter Jurisdiction Based on Improper Removal**
Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The party

Exhibit 4
Page 1 of 5

Burnett v. Tufguy Productions, Inc., Not Reported in Fed. Supp. (2010)

2010 WL 11578884

asserting federal jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen*, 511 U.S. at 377. Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A court may raise the question of subject matter jurisdiction *sua sponte* at any time during an action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). Regardless of who raises the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice ¶ 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

**\*2** A district court's jurisdiction extends to cases removed from state court under particular circumstances. 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). In cases removed from state court, a federal court later finding a lack of subject matter jurisdiction does not dismiss, but must remand to state court. 28 U.S.C. § 1447(c). As discussed, *infra*, there is some disagreement relevant to the present case about the meaning of "properly joined and served." The disagreement concerns whether the presence of a "properly joined" (meaning not fraudulently joined) forum defendant who has not been formally served at the time of removal by another defendant prevents removal under § 1441(b). A decision to remand a case removed on any other basis than civil rights removal jurisdiction under 28 U.S.C. § 1443 "is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

**B. Dismissal for Failure to Prosecute or Failure to Comply with a Court Order**

In determining whether to dismiss a claim for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). The first factor always favors dismissal, *id.* (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)), and the fifth factor always weighs against dismissal, *id.* at 643 (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1988)). Under the second factor, a trial judge has discretion to determine the effect of delay in a particular case on docket management. *Id.* at 643 (citing *Yourish*, 191 F.3d at 990). A defendant bears the burden of establishing under the third factor that the plaintiff's actions "impaired the defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Id.* (citing *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987)). Pendency of a lawsuit is insufficient without more. *Id.* Unreasonable delays need not be tolerated, however, and the reason for a delay is relevant to whether it is reasonable. *Id.* at 642–43 (citing *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984)). Under the fourth factor, a court should consider whether public policy strongly favors resolving the particular dispute on the merits, whether dismissal would severely penalize plaintiffs for their attorney's conduct and not their own, and whether any bad conduct by the party is willful, in bad faith, or otherwise interferes with the correct decision of the case. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008).

**III. ANALYSIS**

**A. Improper Removal**

Before addressing the present Motion (#63), the Court will consider remand of the present case *sua sponte* for lack of subject matter jurisdiction. Diversity actions are

Exhibit 4
Page 2 of 5

Burnett v. Tufguy Productions, Inc., Not Reported in Fed. Supp. (2010)

2010 WL 11578884

only removable if no defendants are citizens of the state where the action is brought. 28 U.S.C. § 1441(b). Defendant Tufguy was originally alleged to be a California corporation with its principal place of business in Nevada, (#1, Ex. A, at ¶ 2), as recognized in the Notice of Removal, (#1 ¶ 8). This made Tufguy a citizen of both California and Nevada for the purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1). Even though the SAC does not allege that Tufguy is a Nevada citizen, it still alleges that UFP is a Nevada limited liability company with its principal place of business in Nevada. Post-Page 4 of 10 removal joinder of a forum defendant does not require a district court to remand for lack of subject matter jurisdiction. *Spencer v. U.S. Dist. Court for the N. Dist. of Cal.*, 393 F.3d 867, 870 (9th Cir. 2004) (affirming a district court's decision not to remand). It is yet undecided whether a district court has the discretion to remand under such circumstances. *See id.* at 870 n.1 (declining to decide the issue). More relevant here, it is also undecided whether a district court must remand after removal where a forum defendant is joined but not formally served at the time of removal.[2] A district court ruling that the statute requires remand under such circumstances cannot be reviewed. 28 U.S.C. § 1447(d).

**\*3** For a defendant to "count" as a forum defendant at the time of removal, it must have been "properly joined and served as [a] defendant[ ]" at the time of removal. § 1441(b). In the Notice of Removal, AIG claimed that Plaintiff's counsel confirmed to AIG that Tufguy had not yet been served, and that this meant Tufguy did not count as a forum defendant such that removal would be prevented. AIG cited to *Salveson v. W. States Bankcard Ass'n* for this proposition. 731 F.2d 1423, 1429 (9th Cir. 1984) (holding that failure to join all defendants in the petition is not an error mandating remand). *Salveson* does not, however, provide direct support for the proposition that a joined, but yet-unserved, forum defendant does not count for the purposes of frustrating removal. The *Salveson* rule tolerates a failure to obtain unanimous consent to removal by all defendants, so long as all defendants who have already been served consent, but there is no indication the *Salveson* rule was meant to tolerate removal when a *forum* defendant is named but unserved.[3] Such a construction would often deprive a plaintiff of his vertical choice of forum—when he is entitled to keep the case in state court due to the presence of a forum defendant—by permitting a non-forum defendant to remove simply because he is fortunate enough to be the first stop on a process server's route. The purpose of the forum defendant rule is to reject federal

jurisdiction where at least one defendant is a resident of the forum, as this is presumed to alleviate concerns of state court bias towards the plaintiff, who is usually a resident of the forum. This purpose is not furthered by an exception based on the timing of service in cases where it is clear that at least one forum defendant is properly joined (and will inevitably be served). *See Oxendine v. Merck & Co., Inc.*, 236 F. Supp. 2d 517, 526 (D. Md. 2002). The rule in § 1441(b) is about the potential for citizenship bias in state court, not the timing of service.

District courts have come to different conclusions on this question. One court has noted that "[t]he literal application of § 1441(b) in this case would both produce bizarre results that Congress could not have intended, and results that are demonstrably at odds with the objectives Congress did intend to effect." *Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 643 (D.N.J. 2008) (noting that the "properly joined and served" language in the statute is meant to prevent fraudulent joiner of a forum defendant for the sole purpose of defeating removal attempts). On the other hand, it has also been argued that the additional "and served" requirement directly serves the purpose of avoiding fraudulent joinder, because it is a good indication of gamesmanship when a plaintiff joins a forum defendant but does not promptly serve him. John P. Lavelle, Jr. & Erin E. Kepplinger, *Removal Prior to Service: A New Wrinkle or a Dead End?*, 75 Def. Couns. J. 177, 177 (Apr. 2008). Another court has found removal proper before a forum defendant was served where there was no indication of an attempt to race to remove before the forum defendant was served. *Walborn v. Szu*, No. 08-6178, 2009 WL 983854, at \*5–6 (D.N.J. Apr. 7, 2009). Here, there were four months after filing of the Complaint and removal, negating any argument that there was any race to remove. In an unreported case, a district court found that an interpretation of § 1441(b) that prevents removal based on the presence of a yet-unserved forum defendant "would read the words 'and served' out of § 1441(b), rendering them superfluous." *Hutchins v. Bayer Corp.*, No. 08-640-JJF-LPS, 2009 WL 192468, at \*8 (D. Del. Jan. 23, 2009). Some courts have followed the "policy reasons" interpretation, but a majority of courts have followed the "plain language" interpretation. George Lieberman, *A Guide to Removal Remand*, Federal Lawyer (Aug. 2009). There appears to be no case law addressing improper remand by a district court based on violation of the forum defendant rule, likely because the Court of Appeals does not have jurisdiction to review such an order. 28 U.S.C. § 1447(d); *see, e.g., Holmstrom v. Peterson*, 492 F.3d 833,

Exhibit 4
Page 3 of 5

Burnett v. Tufguy Productions, Inc., Not Reported in Fed. Supp. (2010)

2010 WL 11578884

839 (7th Cir. 2007) (denying jurisdiction to review a remand based on failure to join an unserved forum defendant).

In summary, the Court believes it may reasonably find that § 1441(b) does not permit removal in the present case because the "properly joined and served" language of the statute only excuses the presence of fraudulently joined forum defendants, not the presence of properly joined forum defendants who have simply not yet been served at the time of removal. The Court believes it may also reasonably find that § 1441(b) does allow removal before a properly joined forum defendant has been formally served. Remand would not be reviewable by the court of appeals, § 1447(d), but a decision not to remand would be reviewable de novo if Plaintiff made such a motion and the court denied it, see D-Beam Ltd. P'ship v. Roller Derby Skates, Inc., 366 F.3d 972, 974 n.2 (9th Cir. 2004).

*4 In their blind brief, Tufguy, UFP, and Zuffa argue that there is diversity jurisdiction because the SAC brings causes of action against only foreign entities, making domestic entities "fraudulently joined." But the SAC does in fact bring a negligence cause of action against Tufguy, who was alleged to be a forum defendant at the time of removal, and against UFP, who is still alleged to be a forum defendant. (See #1, Ex. A, at ¶ 1; #27 ¶¶ 3–5). Tufguy alleges that it is incorporated in California, but it admits in its answer to the SAC that UFP is a Nevada limited liability company with its principal place of business in Nevada. Both of these entities were sued in the original Complaint as Tufguy d/b/a Ultimate Fighting Productions. Defendants do not address whether removal was proper in the first instance. They only address the questions of whether the SAC would support diversity jurisdiction if it had been filed as the original complaint and whether removal by NUFIC would have been proper in absence of consent by Tufguy and Zuffa. In short, this brief is not helpful in deciding the question before the Court: whether removal by AIG was proper when forum defendants, Tufguy and/or UFP, had been joined but had not yet been served.

In its blind brief, NUFIC argues that in the SAC, Plaintiff does not allege that Tufguy's principal place of business is in Nevada, but only that it does business in Nevada. But this, again, misses the point. The question is whether removal was proper, not whether the SAC would suffice to create diversity jurisdiction if it were filed as the original complaint. UFP has always been alleged to be a Nevada limited liability company with its principal place of business in Nevada. The Complaint alleged that Tufguy was doing business as UFP, and the SAC alleges that UFP is its own company. The Complaint therefore alleged that there was a forum defendant, and this allegation has not been changed. The case was removed before this forum defendant was formally served, but after it had been joined.[4] NUFIC argues that the Court should follow the plain language approach to interpreting § 1441(b) and hold that because UFP was not served at the time of removal, that its presence as a joined forum defendant is not improper. NUFIC adds no authority or argument to this side of the issue beyond what the Court has already laid out. NUFIC does add, however, that if the Court were to adopt the "policy reasons" interpretation, that it should still hold removal to have been proper in this case, because, as the Court noted, there is no indication in the present case that AIG raced to remove before a forum defendant was served. The Court is convinced that this is correct and that neither a "plain language" nor a "policy reasons" interpretation of the removal statute requires remand in this case.

NUFIC also argues that UFP is fraudulently joined because Plaintiff has no intention of prosecuting its case against UPF. There is no evidence of fraudulent joinder at this time. Plaintiff has never argued for remand, which is a good indication that joinder was not fraudulent, regardless of the merits of Plaintiff's case against UFP. Plaintiff's causes of action against UFP are the same as his causes of action against Tufguy, who he previously believed were the same entity. If UFP believes Plaintiff has not stated a claim against it, it may file a motion to dismiss under Rule 12(b)(6).

Plaintiff has not filed a brief.

**B. Lack of Prosecution**
Defendant argues that Plaintiff has not prosecuted the case "at all" and has violated the Court's order by failing to schedule a discovery conference. Plaintiff responds that he has reasonably prosecuted the case and that it is Defendant who has refused to cooperate in scheduling a discovery conference.

The Clerk's record indicates the following activity by Plaintiff since removal on October 3, 2008: (1) a stipulation to substitute NUFIC for AIG filed on October 10, 2008, (#5); (2) a response to a motion to dismiss filed on February 2, 2009, (#15); (3) the Amended Complaint filed on March 18, 2009, (#22); (4) the Second Amended Complaint filed on March 31, 2009, (#27); (5) posting of

Exhibit 4
Page 4 of 5

2010 WL 11578884

a $500 cash deposit on July 24, 2009, (#51); and (6) posting of three $500 cash deposits on November 3, 2009, (#60, # 61, #62). Plaintiff argues that any delay or resulting prejudice is due to Defendants' refusal to cooperate in litigation and failure to file timely answers.

**\*5** Magistrate Judge Johnston's Minute Order of October 19, 2009 required "counsel for the parties" to file a proposed discovery plan and scheduling order on or before November 2. (#55). Defendant NUFIC submitted such a proposed order on November 2. (#56). In the "unilateral" proposed order, NUFIC alleged that Plaintiff had been unresponsive to Magistrate Judge Johnston's minute order and NUFIC's offers to meet to agree on a proposed order. Plaintiff filed a joinder to the proposed order the same day, noting that he had posted cash bonds and that he hoped Defendants would soon thereafter answer the SAC. (#58).

There are the usual interests of expediting litigation and deciding cases on their merits, which counsel for and against dismissal, respectively. The facts do not amplify these factors here. There does not appear to have been any undue delay in this case, and even if there has been, it has had a negligible effect on the Court's docket. Dismissal of the case based on an alleged failure to meet and agree on a joint discovery plan and scheduling order would be an extreme remedy in this case. Plaintiff's failure to

participate in discussions with Defendant, even presuming the failure was entirely his fault, has simply not delayed the trial. NUFIC has not been prejudiced and will in fact receive the discovery plan and scheduling order it has requested. Its ability to proceed to trial or to obtain a rightful decision has not been impaired. Dismissal would severely penalize Plaintiff for his attorney's conduct, which does not appear to be egregious, or to have resulted in any prejudice, even if he is completely at fault for failing to discuss the proposed order with NUFIC's counsel. The Court denies the present motion but notes that Plaintiff has waived any objections to NUFIC's proposed discovery plan and schedule.

### CONCLUSION

IT IS HEREBY ORDERED THAT the Motion to Dismiss Action for Failure to Prosecute Claim and Comply with Court's Order (FRCP 41(b)) (#63) is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11578884

### Footnotes

1   The Court has granted a stipulation by the parties that "NUFIC" should be substituted for "AIG" wherever the latter appears in the SAC, and that AIG is dismissed as a party. (#49).

2   28 U.S.C. § 1441(b) uses the words "joined" and "served" separately, indicating a contemplation of different meanings. Black's defines "joinder" as "[t]he uniting of parties or claims in a single lawsuit." Black's Law Dictionary 913 (9th ed. 2009). This indicates that any party named in a suit has been "joined."

3   The *Salveson* court stated that "[o]ur circuit rule is that a party not served need not be joined; the defendants summonsed can remove by themselves." 731 F.2d at 1429 (citing *Cmty. Bldg. Vo. v. Md. Cas. Co.*, 8 F.2d 678 (9th Cir. 1925)). But here, a forum defendant, Tufguy, was in fact joined before removal.

4   NUFIC alleges that it properly removed the case. Although not strictly material to the question before the Court, it is not correct that NUFIC removed. AIG, which has since been dismissed as a party, removed. (*See* #1).

   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 4
Page 5 of 5

KeyCite Yellow Flag - Negative Treatment

Disagreed With by U.S. Bank, N.A. as Trustee to Wachovia Bank National Association v. Fidelity National Title Group, Inc., D.Nev., November 29, 2021

2020 WL 3892786
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

CARRINGTON MORTGAGE SERVICES, LLC,
Plaintiff(s),
v.
TICOR TITLE OF NEVADA, INC., et al.,
Defendant(s).

Case No. 2:20-CV-699 JCM (NJK)
|
Signed 07/10/2020

**Attorneys and Law Firms**

Ariel E. Stern, Natalie L. Winslow, Nicholas Belay, Akerman LLP, Las Vegas, NV, for Plaintiff(s).

Kevin Samuel Sinclair, Sophia Shunwan Lau, Early Sullivan Wright Gizer & McRae LLP, Las Vegas, NV, for Defendants Ticor Title of Nevada, Inc., Chicago Title Insurance Company.

Kevin Samuel Sinclair, Early Sullivan Wright Gizer & McRae LLP, Las Vegas, NV, for Defendant Ticor Title Insurance Company.

ORDER

James C. Mahan, UNITED STATES DISTRICT JUDGE

**\*1** Presently before the court is plaintiff Carrington Mortgage Services, LLC's ("Carrington") motions to remand (ECF No. 13) and for attorneys' fees (ECF No. 14). Defendant Chicago Title Insurance Company ("Chicago Title") filed a response (ECF No. 40), to which Carrington replied (ECF No. 43).

**I. Background**

The instant action arises from an HOA superpriority lien foreclosure. Carrington is the beneficiary under a first recorded deed of trust encumbering the property located at 9508 Bluff Ledge Avenue, Las Vegas, Nevada 89149, which was subject to an HOA foreclosure sale pursuant to NRS chapter 116. (ECF No. 1-2 at 3–5). Carrington had a title insurance policy with Ticor Title of Nevada, Inc. ("Ticor Nevada") and/or Ticor Title Insurance Company ("Ticor Insurance"). Id. at 2–3. Chicago Title is the successor-in-interest to Ticor Insurance.[1] Id. at 2.

As a result of the HOA foreclosure sale, Carrington made a claim on its title insurance, which defendants denied. Id. at 6–9. Carrington brought the instant action in state court, alleging declaratory judgment, breach of contract, "bad faith breach of insurance contract," and violation of Nevada Revised Statute ("NRS") 686A.310. See generally id.

Just one day after the case was filed—before any defendants were served—Chicago Title removed this action. (ECF No. 1). Carrington now moves to remand. (ECF No. 13).

**II. Legal Standard**

" 'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' " Gunn v. Minton, 568 U.S. 251, 256 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes of Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989).

Upon notice of removability, a defendant has thirty days to remove a case to federal court once he knows or should have known that the case was removable. Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir.

Exhibit 5
Page 1 of 5

2020 WL 3892786

2006) (citing 28 U.S.C. § 1446(b)(2)). Defendants are not charged with notice of removability "until they've received a paper that gives them enough information to remove." *Id.* at 1251.

Specifically, "the 'thirty day time period [for removal] ... starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Id.* at 1250 (quoting *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 690–91 (9th Cir. 2005) (alterations in original)). "Otherwise, the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable. *Id.* (quoting 28 U.S.C. § 1446(b)(3)).

**\*2** A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

## III. Discussion

For a United States district court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be completely diverse and the amount in controversy must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1098 (9th Cir. 2003). A removing defendant has the burden to prove by a preponderance of the evidence that the jurisdictional amount is met. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996).

Here, Carrington contends that Chicago Title's removal violated the "forum defendant rule," codified in 28 U.S.C. § 1441(b)(2), because codefendant Ticor Nevada is a Nevada corporation.[2] (*See generally* ECF No. 13).

## A. "Snap" removal

The forum defendant rule expressly prohibits removal based on diversity jurisdiction in cases where "any of the parties in interest properly joined and served as defendants is a citizen of the [s]tate in which [the] action is brought." 28 U.S.C. § 1441(b)(2); *see also Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) ("Separate and apart from the statute conferring diversity jurisdiction, 28 U.S.C. § 1332, § 1441(b) confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state.").

However, the forum defendant rule "is a procedural, or non-jurisdictional, rule." *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). Unlike procedural rules, "jurisdictional bars cannot be waived by the parties and may be addressed *sua sponte*," *Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005).

The forum defendant rule's characterization as a procedural, rather than jurisdictional, rule has led to a new form of jurisdictional gamesmanship in litigation: "snap" removal.[3] Because § 1441(b) bars removal when "any of the parties in interest properly joined **and served** as defendants" is a forum defendant, snap removal allows a nonforum defendant to remove an action before the diversity-defeating forum defendant is served. Although the Ninth Circuit has not endorsed the practice, several other circuit courts have. *See, e.g., Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153 (3d Cir. 2018); *McCall v. Scott*, 239 F.3d 808, 813, n. 2 (6th Cir. 2001).

**\*3** Here, the parties agree that Ticor Title of Nevada is a Nevada corporation and, therefore, a forum defendant. Chicago Title argues that its removal was a proper snap removal because Ticor Nevada had not yet been served. Thus, if Chicago Title's snap removal was proper, this court has jurisdiction. If it was not, then remand is necessary.

In this case, the court need not—and does not—decide whether snap removals are generally allowable in this district. Instead, the court finds that Chicago Title's snap removal was procedurally defective because Chicago Title removed this action before it was served.

Although not binding on this court, Judge Woodlock's

Exhibit 5
Page 2 of 5

detailed discussion of snap removal in *Gentile v. Biogen Idec, Inc.* is persuasive. 934 F. Supp. 2d 313 (D. Mass. 2013). In *Gentile*, no defendant had been served prior to the nonforum defendant's removal. *Id.* Judge Woodlock acknowledged that "[d]istrict courts are in disarray on the question presented by this case," but ultimately adopted Judge O'Kelley's analysis in another case, *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361 (N.D. Ga. 2011). *Id.* at 316. Although *Hawkins* was decided prior to the 2011 amendment of § 1441(b), Judge Woodlock found that "[t]he amendments to section 1441(b) do not change the statute's plain meaning." *Id.* at 318.

In particular, the use of the word "any" in "any parties in interest properly joined and served" necessarily meant "that the statute assumes at least one party has been served; ignoring that assumption would render a court's analysis under the exception nonsensical and the statute's use of 'any' superfluous." *Id.* Thus, under the plain language of the statute, "the lack of a party properly joined and served does not mean an 'exception' to removal is inapplicable, but rather means that an even more basic assumption embedded in the statute—that a party in interest had been served prior to removal—has not been met." *Id.* Judge Woodlock concluded, after an extensive recitation of the history and policy behind removal, as follows:

> Precluding removal until at least one defendant has been served protects against docket trolls with a quick finger on the trigger of removal. Under the reading I have given to section 1441(b) here, plaintiffs legitimately seeking to join a forum defendant face the modest burden of serving that defendant before any others. If a plaintiff serves a non-forum defendant before serving a forum defendant, he has effectively chosen to waive an objection to the removal by a nimble non-forum defendant who thereafter removes the case before service upon a forum defendant named in the complaint. And, even when a forum defendant is served first, my reading anticipates a situation in which an unserved non-forum

defendant may remove following service on a forum defendant, in hopes of arguing that joinder of the forum defendant was fraudulent. This reading of the statute thus accommodates the clear congressional purpose animating section 1441(b)—preventing abuse by plaintiffs in forum selection—while also closing an unintended loophole incentivizing parallel abuse by defendants seeking to escape a state forum in which a co-defendant is a citizen, all without doing violence to the plain language of the statute.

*Id.* at 322–23.

The court agrees with Judge Woodlock and adopts the same reasoning. Thus, Chicago Title could not remove prior to being served. The possibility of snap removal notwithstanding, Chicago Title's removal in this case was procedurally defective.

**\*4** Accordingly, the court finds that remand is appropriate unless Ticor Nevada, the forum defendant, was fraudulently joined.

### B. Fraudulent joinder

Before the court may remand this case, however, it must address Chicago Titles remaining argument. Chicago Title believes that Ticor Nevada, which acted "simply as the title agent with respect to the issuance of the title policy," was fraudulently joined in this action to improperly thwart removal. (ECF No. 40 at 13–16).

An exception to the requirement of complete diversity exists where a non-diverse defendant has been "fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citations omitted). "Fraudulent joinder is a term of art." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of

Exhibit 5
Page 3 of 5

the plaintiff to establish a cause of action against the non-diverse party in state court.' " *GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)).

"If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe*, 811 F.2d at 1339; *see also Ritchey*, 139 F.3d at 1318 ("[A] defendant must have the opportunity to show that the individuals joined in the action **cannot be liable on any theory**." (emphasis added)). Conversely, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court **must** find that the joinder was proper and remand the case to the state court." *GranCare, LLC*, 889 F.3d at 548 (bold emphasis added; italic emphasis in original).

"Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). The Ninth Circuit has "made it clear that the party invoking federal court jurisdiction on the basis of fraudulent joinder bears a 'general presumption against fraudulent joinder.' " *Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (quoting *Hunter*, 582 F.3d at 1046).

Here, Chicago Title argues that Carrington failed to allege claims against Ticor Nevada as a "title agent," which is defined by NRS 692A.060, as opposed to a "title insurer," as defined by NRS 692A.070. (ECF No. 40 at 13). Thus, Chicago Title urges that Ticor Nevada is not a party to the insurance contract, owed no contractual duties to Carrington, and therefore cannot be held liable on any of Carrington's currently pleaded theories. *Id.* at 14. However, Carrington contends (1) "Ticor [Nevada] was a signatory to the policy and explicitly listed as the insuring company" and (2) "to the extent Ticor [Nevada] was not an insurer, Carrington should be able to amend its complaint to reflect allegations against Ticor Title as an agent." (ECF No. 43 at 7–8).

**\*5** Chicago Title posits that granting Carrington leave to amend its complaint to allege claims against Ticor Nevada as a title agent would be futile. (ECF No. 40 at 14). Carrington disagrees, arguing it has standing because it "stands in the original lender's shoes with respect to the policy." (ECF No. 43 at 8). Carrington further argues that

its claims against Ticor Nevada as an agent would not be time-barred. *Id.* at 8–9.

The court finds that Chicago Title has not borne its "heavy burden" to show, by clear and convincing evidence, that Carrington's failure to state a cause of action against Ticor Nevada is obvious according to the settled rules of the state. Carrington's complaint alleges that Ticor Nevada was a signatory and insurer under the policy. (ECF No. 1-2 at 2–3). Carrington now argues that "[p]erhaps Ticor Title made a mistake by including itself as an insurer on the policy. If so, it may have defenses against Carrington's claims. But that does not mean Carrington fraudulently joined it." (ECF No. 13 at 8). Further, the purported defect in Carrington's complaint is only that it treats Ticor Nevada as a title insurer rather than a title agent. Even assuming the truth of this argument, Ticor Nevada may be liable on another state law theory in light of the possibility of fruitful amendment to Carrington's complaint.

"While plaintiff may not ultimately recover against [defendant], this does not mean that [defendant] was fraudulently joined. In assessing whether a defendant was fraudulently joined, the court need not look extensively at the merits of the claims ...." *Milligan v. Wal-Mart Stores, Inc.*, No. 2:14-CV-1739 JCM CWH, 2014 WL 7240162, at \*3 (D. Nev. Dec. 18, 2014) (citation omitted). The court finds that there is a *possibility* that a state court would find that the complaint states a cause of action against Ticor Nevada.

Accordingly, the court finds that Ticor Nevada is not fraudulently joined and, as a result, defeats diversity jurisdiction under the forum defendant rule. Remand is necessary, and the court grants Carrington's motion.

### C. Attorneys' fees

Under the "American rule," litigants generally must pay their own attorneys' fees in the absence of a rule, statute, or contract authorizing such an award. *See Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). One such statute is 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Under this provision, the decision whether to award attorney's fees "is left to the district court's discretion, with no heavy congressional thumb on either side of the scales." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139

Exhibit 5
Page 4 of 5

(2005).

That is not to say the courts' discretion is unlimited. *See id.* at 139–140 ("Discretion is not whim," but should be "guided by sound legal principles."). The Supreme Court has held that "absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* While the Supreme Court has not defined what makes removal objectively unreasonable, the Ninth Circuit has looked to the clarity of the relevant law at the time of removal. *See Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008) ("[T]he test is whether the relevant law clearly foreclosed the defendant's basis of removal.").

**\*6** In light of the foregoing discussion, the court notes that the law pertaining to snap removal is unsettled. Thus, the court finds that Chicago Title's removal was reasonable and declines to award Carrington attorneys' fees. Carrington's motion is denied.

## IV. Conclusion
Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Carrington's motion to remand (ECF No. 13) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Carrington's motion for attorneys' fees (ECF No. 14) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the matter of *Carrington Mortgage Service, LLC v. Ticor Title of Nevada, Inc. et al.*, case number 2:20-cv-00699-JCM-NJK, be, and the same hereby is, REMANDED to the Eighth Judicial District Court in Clark County, Nevada.

## All Citations

Slip Copy, 2020 WL 3892786

## Footnotes

1    Chicago Title indicates that Ticor Insurance merged into Chicago Title in 2010. (ECF No. 1 at 2).

2    Carrington withdrew its objections to the amount in controversy. (ECF No. 48).

3    Several courts across the country have noted that the ubiquity of electronic docketing has also contributed to the rise in snap removals. *See, e.g., Delaugher v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1377 (N.D. Ga. 2018) ("Now referred to as snap removals, this litigation tactic has become increasingly popular in recent years due in part to the increased ease of electronic docket monitoring."); *Perez v. Forest Labs., Inc.*, 902 F. Supp. 2d 1238, 1243 (E.D. Mo. 2012) ("Pre-service removal **by means of monitoring the electronic docket** smacks more of forum shopping by a defendant, than it does of protecting the defendant from the improper joinder of a forum defendant that plaintiff has no intention of serving." (emphasis added)).

**End of Document**                                        © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 5
Page 5 of 5

2020 WL 7360680

2020 WL 7360680
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, Plaintiff
v.
FIDELITY NATIONAL TITLE GROUP, INC., et
al., Defendants

Case No.: 2:20-cv-01606-APG-BNW
|
Signed 12/14/2020

**Attorneys and Law Firms**

Darren T. Brenner, Lindsay Robbins, Wright, Finlay &
Zak, LLP, Las Vegas, NV, for Plaintiff.

Kevin Samuel Sinclair, Sinclair Braun LLP, Encino, CA,
for Defendants Fidelity National Title Group, Inc.,
Fidelity National Title Agency of Nevada, Inc.

Scott E. Gizer, Sophia Shunwan Lau, Early Sullivan
Wright Gizer & McRae LLP, Gary L. Compton, Las
Vegas, NV, Kevin Samuel Sinclair, Sinclair Braun LLP,
Encino, CA, for Defendant Fidelity National Title
Insurance Company.

**Order Granting Motion to Remand and Denying
Motion for Fees and Costs**

[ECF No. 5, 24]

ANDREW P. GORDON, UNITED STATES DISTRICT
JUDGE

**\*1** Defendant Fidelity National Title Insurance Company
(FNTIC) removed this case to this court before any of the
defendants were served with process. Plaintiff Deutsche
Bank National Trust Company (Deutsche) moves to
remand this case to state court claiming that removal is
barred by the forum defendant rule of 28 U.S.C. §
1441(b)(2).[1] The issue presented is whether a non-forum
defendant may remove a case before any defendant was

served when one of the defendants is a citizen of the
forum state. Because removal of this case was premature,
I grant the motion and remand the case.

**PROCEDURAL POSTURE**
Deutsche filed this action in state court on Friday, August
28, 2020. Deutsche sued FNTIC, Fidelity National Title
Agency of Nevada, Inc. (Fidelity Nevada), and Fidelity
National Title Group, Inc. Fidelity Nevada is the only
defendant that is a Nevada entity.

Two days after the complaint was filed (on Sunday,
August 30), FNTIC removed the case to this court. Given
the immediacy of removal over the weekend, none of the
defendants had been served when the case was removed.
This tactic of removing a diversity case before a forum
defendant has been served is termed a "snap removal."
The goal is to avoid the bar against removal that exists
when any defendant "properly joined and served" is a
forum defendant. 28 U.S.C. § 1441(b)(2). Deutsche
now moves to remand, arguing that removal was
improper because Fidelity Nevada is a forum defendant
and FNTIC's snap removal violated § 1441(b)(2).
FNTIC responds that Fidelity Nevada had not been served
so § 1441(b)(2) does not preclude removal.

**ANALYSIS**
"Federal courts are courts of limited jurisdiction.... It is to
be presumed that a cause lies outside this limited
jurisdiction, and the burden of establishing the contrary
rests upon the party asserting jurisdiction." *Corral v.
Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773–74
(9th Cir. 2017) (internal quotations and citation omitted).
This burden on a removing defendant is especially heavy
because "[t]he removal statute is strictly construed, and
any doubt about the right of removal requires resolution
in favor of remand." *Id.* (citations omitted). *See also
Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.
1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592
F.2d 1062, 1064 (9th Cir. 1979)) ("Federal jurisdiction
must be rejected if there is any doubt as to the right of
removal in the first instance.").

Exhibit 6
Page 1 of 4

2020 WL 7360680

### A. Fidelity Nevada is not a Sham Defendant.

The forum defendant rule bars removal based on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). FNTIC first argues I should ignore Fidelity Nevada for removal purposes because it is a sham defendant named solely to invoke the forum defendant rule. FNTIC contends that the sole basis for this suit is Deutsche's attempt to recover under a title insurance policy FNTIC issued. Fidelity Nevada is an agent, not an insurer, and thus has no contractual or legal obligation to indemnify Deutsche under that policy. *See* ECF No. 11 at 13-15. Deutsche responds that it is asserting claims and allegations against Fidelity Nevada that go beyond the policy.

**\*2** "[U]nder the fraudulent-joinder doctrine, joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (internal quotation marks and alterations omitted). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)

Deutsche's complaint asserts potentially valid claims against Fidelity Nevada. Deutsche alleges that its predecessor negotiated with Fidelity Nevada to obtain a title policy, and that Fidelity Nevada represented that the policy would cover losses caused by the lien that gave rise to this dispute. ECF No. 1-2 ¶ 45; *see also id.* ¶ 70 ("Fidelity Nevada [is] responsible for providing coverage that insured the Deed of Trust in first position over all other liens, and other representations contained in the Policy."); *id.* ¶ 143 ("When the Policy was issued, it was the intent of Deutsche Bank's predecessor-in-interest ... and Fidelity Nevada that Form 100 and Form 115.2 would provide coverage...."). Separate from the policy, Deutsche alleges that "Fidelity Nevada had a special relationship of trust and confidence and fiduciary obligations to [Deutsche] because it was also acting as the Trustee for the Deed of Trust." *Id.* ¶ 156; *see also id.* ¶ 76 (similar allegations about Fidelity Nevada's role as Trustee). Deutsche asserts consumer fraud and deceptive trade practices claims against Fidelity Nevada for "knowingly misrepresenting" the coverage that Deutsche's

predecessor negotiated for. *Id.* ¶¶ 183-187.

While these claims and allegations may not be pleaded as clearly as possible, FNTIC has not shown by clear and convincing evidence that they obviously fail to assert claims against Fidelity Nevada under Nevada law. FNTIC focuses on the obligations under the title policy, but it ignores Deutsche's non-contractual claims and allegations regarding Fidelity Nevada's alleged misrepresentations, violations of fiduciary duty as a Trustee, and violations of Nevada's consumer fraud and deceptive trade practices statutes. Fidelity Nevada is therefore not a sham defendant. Because it is a forum defendant, § 1441(b)(2) applies here.

### B. FNTIC's Snap Removal was Improper Under 28 U.S.C. § 1441(b)(2).

FNTIC next argues that even if Fidelity Nevada is a legitimate defendant, it had not been served at the time of removal. Thus, FNTIC contends that § 1441(b)(2) is not a bar to removal because Fidelity Nevada had not been "properly joined and served" as required under the statute. Deutsche responds that snap removals like this violate the purpose of § 1441(b)(2), which is to preserve a plaintiff's choice of a state court forum by suing a proper forum defendant. The question is thus whether a non-forum defendant is permitted to remove a diversity case before any defendants have been served.

The plain language of § 1441(b)(2) does not answer the question, as evidenced by the number of courts reaching different conclusions on whether snap removal is permitted under the statute. *See Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 317-18 (D. Mass. 2013) (collecting cases). "The question has deeply divided district courts across the country." *Id.* at 315.

**\*3** In *Gentile*, Judge Woodlock held that § 1441(b)(2)'s plain language prohibits snap removal because it assumes that at least one defendant has been served before removal. Judge Woodlock was interpreting the prior version of § 1441(b)(2), which was applicable to the facts of that case. That version stated that an action founded on diversity of citizenship "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[2] In the phrase "none of the parties in interest properly joined and served," the word

Exhibit 6
Page 2 of 4

"none" functions as a pronoun and means "not any." 934 F. Supp. 2d at 318.

"Any," in turn, means "one or more indiscriminately from all those of a kind." ... Inherent in the definition is some number of the "kind" from which the "one or more" can be drawn. Accordingly, the use of "none" and definite article "the" when referring to "parties" assumes that there is one or more party in interest that has been properly joined and served already at the time of removal, among which may or may not be a forum-state defendant. Thus, section 1441(b) conditioned removal on *some* defendant having been served.

*Id.* (internal citation omitted). Judge Woodlock notes that the current version of the statute—"any of the parties" instead of "none of the parties"—has the same meaning. "[T]he statute assumes at least one party has been served; ignoring that assumption would render a court's analysis under the exception nonsensical and the statute's use of 'any' superfluous." *Id.* Thus, a "basic assumption embedded in the statute [is] that a party in interest had been served prior to removal...." *Id.* This interpretation precludes snap removals.

While this interpretation is not the only one possible, I agree it is the most cogent.[3] Reasonable jurists have interpreted this statute differently, and the fact that "[d]istrict courts are in disarray on the question"[4] confirms that the statute's language is ambiguous. I thus "look to 'canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent.'" *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1183 (9th Cir. 2019) (quoting *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006)).

To confirm the validity of his interpretation, Judge Woodlock examined the history of the removal doctrine and the "properly joined and served" language. *Gentile*, 934 F. Supp. 2d at 319-21. "The removal power, and by extension the forum defendant rule, is founded on the basic premise behind diversity jurisdiction itself, [which] was designed to protect non-forum litigants from possible state court bias in favor of forum-state litigants." *Id.* at 319. Forum defendants presumably do not need that protection from local bias, so § 1441(b)(2) protects the plaintiff's choice of a state court forum where a forum defendant is a proper party to the case. *Id.*

There is scant legislative history to help interpret the phrase "properly joined and served." *Id.* But it seems

clear from relevant caselaw that the purpose "was to prevent plaintiffs from defeating removal through improper joinder of a forum defendant; incomplete service appears to have been included as a means of identifying and policing such abuse by proxy." *Id.* at 319-20. The goal was to thwart gamesmanship by plaintiffs who joined forum defendants with no intent of ever serving them.

**\*4** Snap removal, on the other hand, allows gamesmanship by defendants who are sophisticated and have sufficient resources (or suspicion of impending litigation) to monitor court filings and immediately remove a case before a forum defendant can be served. This practice has become more prevalent with the advent of modern technology that allows near-real-time monitoring of dockets across the country. Congress would not have wanted to stop gamesmanship by plaintiffs by allowing gamesmanship by defendants.

The purposes underlying § 1441(b)(2) are better served by disallowing removal before any defendant is served. The plaintiff can preserve its ability to remain in state court by serving the forum defendant first and without delay. The non-forum defendant may still argue that the forum defendant is a sham who should be disregarded for purposes of removal. *See Gentile*, 934 F. Supp. 2d at 322-23. And this interpretation is consistent with § 1441(b)(2)'s plain language. *Id.* at 323.

Here, FNTIC's removal was premature because no defendant had been served. As a result, I must remand the case to state court.

### C. Deutsche is not Entitled to Recover its Fees and Costs.

Deutsche moves for an award of its fees and costs incurred as a result of FNTIC's removal. ECF No. 24. While I find that removal was improper, the courts are in disarray on this issue, so removal was not "objectively unreasonable." *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006). FNTIC did not act in bad faith or frivolously in removing the case. I deny Deutsche's motion for fees and costs.

### CONCLUSION

Exhibit 6
Page 3 of 4

2020 WL 7360680

I THEREFORE ORDER that Deutsche's motion to remand **(ECF No. 5) is granted**. This case is remanded to the state court from which it was removed for all further proceedings.

I FURTHER ORDER that Deutsche's motion for a stay and for its fees and costs **(ECF No. 24) is denied.**

The Clerk of the Court is instructed to close this case.

**All Citations**

Slip Copy, 2020 WL 7360680

**Footnotes**

1    Deutsche also moves for an award of its attorneys fees and costs incurred in connection with the removal. ECF No. 24.

2    The statute was amended in 2011 to its present language. Judge Woodlock found that "the amendments did not materially change the relevant language of the statute." 934 F. Supp. 2d at 316, n.2.

3    My colleague Judge Mahan agrees. *See* *Carrington Mortgage Services, LLC v. Ticor Title of Nevada, Inc.*, No. 20-cv-00699-JCM-NJK, 2020 WL 3892786 at *3 (D. Nev. July 10, 2020).

4    934 F. Supp. 2d at 316.

---

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 6
Page 4 of 4

2021 WL 3930611

2021 WL 3930611
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

G2 SECURE STAFF LLC

v.

ABM INDUSTRIES INC., et al.

Case No. CV 21-1009-JFW(SKx)
|
Filed 02/12/2021

**Attorneys and Law Firms**

Davil R. Vasquez, Adelson McLean, APC, Newport Beach, CA, Thomas Edward St. Germain, Walsworth, Irvine, CA, Michael Donald McLean, Adelson McLean, Newport Beach, CA, for G2 Secure Staff LLC.

Scott D. Cunningham, Ivy Larsen Nowinski, Condon and Forsyth LLP, Los Angeles, CA, for ABM Industries Inc., Chiduweayi Egbuho.

**PROCEEDINGS (IN CHAMBERS): ORDER TO SHOW CAUSE RE: REMAND**

JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

**\*1** On August 24, 2020, Plaintiff G2 Secure Staff, LLC ("Plaintiff") filed a Complaint against Defendants ABM Industries Inc. ("ABM") and Chiduweayi Egbuho ("Egbuho") (collectively, "Defendants") in Los Angeles Superior Court. On January 22, 2021, ABM removed the action to this Court on diversity grounds pursuant to 28 U.S.C. § 1332(a) in a case entitled *G2 Secure Staff LLC v. ABM Industries Inc., et al.*, Case No. 21-631-JFW (SKx) ("*G2 Secure* Action I"). On January 29,2021, this Court remanded *G2 Secure* Action I to Los Angeles Superior Court for lack of subject matter jurisdiction. On February 3, 2021, Egbuho again removed the action to this Court on diversity grounds pursuant to 28 U.S.C. § 1332(a) in a case entitled *Secure Staff LLC v. ABM Industries Inc., et al.*, Case No. 21-1009-JFW (SKx) ("*G2*

*Secure* Action II").

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction over only those matters authorized by the Constitution and Congress. *See, e.g., Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The right of removal is entirely a creature of statute," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and the party seeking to avail itself of a removal statute bears the burden of showing that removal is appropriate. *See, e.g., Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."). Any doubts about the right to remove are resolved against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).

There is a major limitation on removal jurisdiction in diversity cases. Even if there is complete diversity, removal is not permitted "if any of the parties in interest properly joined and serviced as defendants is a citizen of the State in which such an action is brought." 28 U.S.C. § 1441(b)(2). Specifically, Section 1441(b)(2), which is also known as the "forum defendant rule," provides:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

In his Notice of Removal, Egburo asserts that he is a citizen of California. Egburo also asserts that his removal of this action is not improper under forum defendant rule because he has not yet been "properly served and joined." However, the "properly joined and served" language in Section 1441, which was added in 1948, has widely been interpreted as reflecting a Congressional intent to

Exhibit 7
Page 1 of 3

prevent the fraudulent joinder of forum defendants in order to avoid removal. *See, e.g., Stan Winston Creatures, Inc. v. Toys R Us, Inc.*, 314 F.Supp.2d 177, 181 (S.D.N.Y. 2003) ("The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve"). In addition, courts have generally found that Congress did not intend to expand federal jurisdiction with this language. *See, e.g., Preseau v. Prudential Insurance Co.*, 591 F.2d 74, 78 (9th Cir.1979) (rejecting an argument that "§ 1441(b), by implication, expanded removal jurisdiction to permit removal, despite want of diversity, if a resident defendant whose presence would defeat diversity had not been served") (citing *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir.1969)); *Sullivan v. Novartis Pharmastein AG*, 575 F.Supp. 2d 640, 645 (D.N.J. 2008) ("Indeed, it is inconceivable that Congress, in adding the 'properly joined and served' language, intended to create an arbitrary means for a forum defendant to avoid the forum defendant rule simply by filing a notice of removal before the plaintiff is able to effect process").

*2 Moreover, several courts in this District have held that a reading of Section 1441's "properly joined and served" language that precludes the application of the forum defendant rule when a defendant removes a case before he is served "would 'eviscerate the purpose of the [f]orum [d]efendant [r]ule.' " *Massachusetts Mut. Life Ins. Co. v. Mozilo*, 2012 WL 11047336, at *2 (C.D. Cal. June 28, 2012) (quoting *Sullivan*, 575 F. Supp. 2d at 645); *see also Khashan v. Ghasemi*, 2010 WL 1444884, at *2 (C.D. Cal. Apr. 5, 2010) (The " 'properly joined and served' language of § 1441(b) does not prevent a finding that the removal was procedurally defective."); *Standing v. Watson Pharm.*, 2009 WL 842211, *5 (C.D. Cal. Mar. 26, 2009) (holding that the joined and served requirement "is not implicated where the non-forum defendant (or forum defendant) seeks to remove the action prior to the service of any defendant"). As the court in *Jones v. KLLM Transport Service, LLC*, 2019 WL 5080340, *3 (C.D. Cal. Oct. 10, 2019), recently held:

> The Court joins those courts who have held that "joined and served" is not a loophole for an in-state defendant to remove a case before he has been properly served. A defendant who has yet to be served has a choice whether to participate in the case. And if he chooses to participate by disturbing the plaintiff's choice of forum and removing to federal court, his citizenship should be

considered just as that of a defendant who has been served. Any other reading of the statute would encourage gamesmanship and undercut § 1441(b)'s purpose of limiting diversity removal when the defendant is already at home. *See Albertson's, Inc. v. Comm'r*, 42 F.3d 537, 545 (9th Cir. 1994) (holding that a court "may not adopt a plain language interpretation of a statutory provision that directly undercuts the clear purpose of the statute.").

*See also Standing* 2009 WL 842211, at *4 ("The Court agrees with Plaintiffs that if the purpose behind the statute is to prevent procedural gamesmanship by plaintiffs through improper joinder, a literal interpretation of the 'joined and served' provision that promotes such gamesmanship by defendants through allowing removal before a plaintiff has a meaningful chance to serve any defendant both undermines the general purpose of the forum defendant rule (i.e. to keep certain cases in state court) and inappropriately prevents plaintiffs from litigating in the forum of their choice"); *Oxendine v. Merck and Co., Inc.*, 236 F.Supp.2d 517, 524 (D. Md. 2002) (holding that "removability can not rationally turn on the timing or sequence of service of process"); *Vivas v. Boeing Co.*, 486 F.Supp. 2d 726, 734 (N.D. Ill. 2007) ("[T]o allow a resident defendant to remove a case before a plaintiff even has a chance to serve him would provide a vehicle for defendants to manipulate the operation of the removal statutes. Allowing either party to do that would be against what the courts have long understood to be Congress's intent"); *Brown v. Organon Int'l Inc.*, 2008 WL 2833294, at *4 (D.N.J. July 21, 2008) (holding that a literal interpretation of Section 1441(b) promotes gamesmanship by defendants by "allow[ing] defendants to avoid the imposition of the forum defendant rule as long as they are monitoring state dockets and avoiding service"); *Sullivan*, 575 F.Supp.2d at 647 ("[G]iven that the purpose of the 'properly joined and served' language is to prevent one form of gamesmanship – improper joinder – the court finds that allowing defendant to engage another type of gamesmanship – a hasty filing of a notice of removal – is demonstrably at odds with Congressional intent").

Accordingly, Plaintiff is ordered to inform the Court, in writing, no later than **February 19, 2021**, if it waives Egbuho's violation of the forum defendant rule. If Plaintiff does not waive, the Court will then decide if remand is appropriate. In addition, Egbuho is hereby ordered to show cause, in writing, no later than **February 19, 2021**, why this Court should not remand this action

Exhibit 7
Page 2 of 3

2021 WL 3930611

because it was improperly removed pursuant to the forum defendant rule. No oral argument on this matter will be heard unless otherwise ordered by the Court. *See* Fed. R. Civ. P. 78; Local Rule 7-15. The Order will stand submitted upon the filing of the responses to the Order to Show Cause. If the parties file a stipulation and proposed order remanding this action to state court, the Court will consider that a satisfactory response to the Order to Show Cause. Plaintiff's failure to respond to the Order to Show Cause will result in the waiver of Egbuho's violation of the forum defendant rule. Egbuho's failure to respond to the Order to Show Cause will result in the remand of this action.

**\*3** IT IS SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 3930611

### Footnotes

1    In ⚑ *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 936 (9th Cir. 2006), the Ninth Circuit determined that violations of the forum defendant rule are procedural, not jurisdictional, and, thus, can be waived if the plaintiff does not object to removal within 30 days of receiving notice.

---

**End of Document**                                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 7
Page 3 of 3

2022 WL 887324

2022 WL 887324
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

HSBC BANK, USA, N.A., AS TRUSTEE on Behalf
of ACE SECURITIES CORP. HOME EQUITY
LOAN TRUST and for the Registered Holder of
Ace Securities Corp. Home Equity Loan Trust,
Series 2006-ASAP5, Asset Backed Passthrough
Certificates, Plaintiff,
v.

FIDELITY NATIONAL TITLE GROUP, INC.;
Chicago Title Insurance Company; Ticor Title of
Nevada, Inc.; Doe Individuals I through X; and
Roe Corporations XI through XX, inclusive,
Defendants.

Case No. 2:21-cv-00153-KJD-NJK
|
Signed 03/25/2022

**Attorneys and Law Firms**

Darren T. Brenner, Lindsay Dragon, Wright Finlay &
Zak, LLP, Las Vegas, NV, for Plaintiff.

Kevin Samuel Sinclair, Sinclair Braun LLP, Encino, CA,
for Defendant Fidelity National Title Group, Inc., Ticor
Title of Nevada, Inc.

Kevin Samuel Sinclair, Sinclair Braun LLP, Encino, CA,
Scott E. Gizer, Sophia Shunwan Lau, Early Sullivan
Wright Gizer & McRae LLP, Gary L. Compton, Las
Vegas, NV, for Defendant Chicago Title Insurance
Company.

**ORDER GRANTING PLAINTIFF'S MOTION TO
REMAND**

Kent J. Dawson, United States District Judge

**\*1** Before the Court are Plaintiff's Motion to Remand
(ECF #6) and Motion for Attorney Fees (ECF #7).
Defendant responded in opposition (ECF #18) to which
Plaintiff replied (ECF #22).

I. Background

On May 11, 2021, the parties stipulated to stay this action
pending the appeal of a similar case. (ECF #26). The
Ninth Circuit issued its ruling on the appeal on November
5, 2021. Wells Fargo Bank, N.A. v. Fidelity Nat'l Title
Ins. Co., No. 19-17332, 2021 WL 5150044 (9th Cir. Nov.
5, 2021). The parties have not requested that the stay be
lifted, but the purpose of the stay was to await the
resolution of that appeal. As such, the Court lifts the stay
to rule on the instant motion. 🚩 Dependable Highway
Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066
(9th Cir. 2007) ("[A] district court possesses the inherent
power to control its docket and promote efficient use of
judicial resources.").

This is a breach of contract and insurance bad faith
lawsuit arising from a title insurance claim. (ECF #6 at 2).
HSBC Bank, USA, N.A. ("HSBC Bank") is the
beneficiary of a deed of trust encumbering real property
in Nevada. Id. HSBC Bank alleges that Ticor Title of
Nevada, Inc. ("Ticor Nevada") and Chicago Title
Insurance Company ("Chicago Title") entered into a
contractual relationship insuring the deed of trust in
superior position to competing liens. Id. at 3. The
Homeowners Association ("HOA") eventually foreclosed
on its lien in April 2015. Id. HSBC Bank filed the instant
lawsuit in Nevada state court on January 28, 2021. Id. at
4. Chicago Title removed the case to this Court on the
same day. Id. HSBC Bank now moves for remand,
arguing that Chicago Title's "snap removal" is
procedurally improper. Id. Chicago Title contends that
under the plain language of the removal statute, snap
removal is proper. Id. at 14. Chicago Title also argues that
Ticor Nevada is a fraudulently joined defendant who was
only added to trigger the forum defendant rule and
prevent removal to federal court. Id. at 14. Chicago Title
is a Florida corporation with its principal place of
business in Florida; Fidelity National Title Group, Inc. is
a Delaware corporation with its principal place of
business in Florida; HSBC Bank is a national banking
association with its main office in Virginia; and Ticor
Nevada is a Nevada corporation with its principal place of
business in Nevada. (ECF #1, at 2).

There are many similar actions currently being litigated in
Nevada and this issue of snap removal has become a
common question. To date, six judges in the District of
Nevada have ruled on the issue.[1] Five, including this

Exhibit 8
Page 1 of 5

2022 WL 887324

Court, have found that snap removal is improper and remanded the cases to state court, while one judge has denied remand, ruling that the snap removal is an acceptable practice according to the plain language of the statute.[2] The Court joins the majority of the judges in the District and finds that Defendant's snap removal prior to service was improper and the forum defendant rule requires a remand to state court.

## II. Legal Standard

**\*2** Federal courts are courts of limited jurisdiction. See U.S. CONST. art. III, § 2, cl. 1; Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Accordingly, there is a strong presumption against removal. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). A defendant may remove any civil action from state court when the federal district court has original jurisdiction. 28 U.S.C. § 1441(a). A diversity case cannot be removed if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Id. at § 1441(b)(2). Courts strictly construe the removal statute against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to right of removal in the first instance." Gaus, 980 F.2d at 566. The removing party bears the burden of establishing federal jurisdiction. California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2007).

Removal based on diversity jurisdiction requires complete diversity, meaning "the citizenship of each plaintiff is diverse from the citizenship of each defendant." Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996). However, when "determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir. 2018) (citing Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914)).

## III. Analysis

Chicago Title argues that the plain language of the removal statute permits removal of this action. Chicago Title focuses on the language of the statute, which states

that diversity actions may not be removed "if any of the parties in interest **properly joined and served** as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). This is known as the forum defendant rule. Chicago Title argues that because it removed the action prior to any defendant being served, the forum-defendant rule does not apply. Additionally, Chicago Title argues that Ticor Nevada, the forum defendant, was fraudulently joined, and as such, the Court should ignore its citizenship when making a diversity determination. HSBC Bank argues that this removal promotes gamesmanship by defendants and undermines the purpose of the forum defendant rule.

### A. Ticor Nevada was not Fraudulently Joined

Fraudulent joinder can be established two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Grancare, LLC, 889 F.3d at 548 (quoting Hunter v. Philip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009)) (internal quotation marks omitted). Under the second prong, a fraudulent joinder "fails to state a cause of action against the resident defendant" if "the failure is obvious according to the settled rules of the state." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). Put differently, the defendant need show that a non-diverse party joined in the action cannot be liable on any theory. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). "A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.' " Grancare, LLC, 889 F.3d at 548 (9th Cir. 2018) (quoting Hunter, 582 F.3d at 1046). The Ninth Circuit has "declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." Id.

**\*3** Chicago Title argues that removal was proper because the only forum defendant, Ticor Nevada, was fraudulently joined. (ECF #18, at 1). HSBC Bank brings five claims against Ticor Nevada: (1) declaratory judgment on the insurance policy; (2) breach of contract; (3) bad faith and breach of the covenant of good faith and fair dealing; (4) deceptive trade practices under NRS § 41.600 and NRS § 598.0915; and (5) unfair practices in settling

Exhibit 8
Page 2 of 5

HSBC Bank, USA, N.A. as Trustee of ACE Securities Corp...., Slip Copy (2022)

2022 WL 887324

claims under NRS § 686A.310 (ECF #1, at 21–29).

The Court cannot find that HSBC Bank has failed to state a cause of action against Ticor Nevada. Chicago Title contests the validity of HSBC Bank's contract claims, alleging Ticor Nevada was not a party to the contract. To support its assertion, Defendant argues that Ticor Nevada did not underwrite the policy. In addition, Chicago Title attacks the alter-ego allegations against Ticor Nevada as an alternative form of liability. However, Chicago Title largely overlooks HSBC Bank's claims against Ticor Nevada for deceptive trade practices under NRS 41.600 and 598.0915 and unfair claim-settling practices under NRS 686A.310. Chicago Title's only argument that these claims are fruitless is that the statute of limitations has expired given the "purported misrepresentation occurred 15 years ago." (ECF #18, at 17). However, actions "against a person alleged to have committed a deceptive trade practice ... shall be deemed to accrue when the aggrieved party discovers, or by the exercise of due diligence should have discovered, the facts constituting the deceptive trade practice." NEV. REV. STAT. § 11.190(2)(d). HSBC Bank alleges that it was not aware of deceptive trade practice until it discovered the internal memoranda and guidelines that Defendants allegedly withheld. (ECF #22, at 13). The fact that the purported misrepresentation occurred over 15 years ago, as Chicago Title argues, is irrelevant. The important question is when HSBC Bank discovered or reasonably should have discovered facts giving rise to the action. Based on the complaint, the claim likely occurred within the statute of limitations period when HSBC discovered that defendants hid internal memoranda and guidelines that concealed coverage.

At this stage in the litigation, the Court will not conduct a "searching inquiry into the merits of the plaintiff's case against the forum defendant." HSBC Bank, 508 F.Supp.3d at 786 (internal citations omitted). Instead, the Court finds that there is a possibility that a state court would find that the complaint states a cause of action against [the forum defendant ... and] must find that the joinder was proper." Id.

B. Chicago Title's Snap Removal was Improper

Chicago Title argues that its snap removal is a valid means of avoiding the forum defendant rule. It urges the Court to follow the appellate courts that have reviewed § 1441(b)(2) and found the statute allows the tactic.

HSBC Bank argues that allowing snap removal would contravene the statute's purpose. Both sides acknowledge that the Ninth Circuit has yet to review the specific question. The Courts in this District who have reached the question have almost uniformly held that 'snap removal' is improper under 28 U.S.C. § 1441(b)(2). Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp., Inc., 532 F.Supp.3d 1004, 1010–11 n.3 (D. Nev. 2021) (collecting cases).[3]

*4 When interpreting a statute, the Court looks first to the plain language of the statute to discern congressional intent. See, e.g., Zuress v. Donley, 606 F.3d 1249, 1252–53 (9th Cir. 2010). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, (2000)) (internal quotation marks omitted). The court "may not adopt a plain language interpretation of a statutory provision that directly undercuts the clear purpose of the statute." Albertson's, Inc. v. C.I.R, 42 F.3d 537, 545 (9th Cir. 1994).

Some appellate courts have determined that the "properly joined and served" language in § 1441(b)(2) renders the statue clear and unambiguous, allowing snap removal before any defendant is served. However, not all courts agree. Many judges from this district reason that the word "any" in "any of the parties in interest properly joined and served" necessarily means that the statute assumes one party has been served. 28 U.S.C. § 1441(b)(2) See Wells Fargo Bank, N.A. v. Old Republic Title Ins. Grp., Inc., No. 2:20-cv-00461-JCM-NJK, 2020 WL 5898779, at *2 (D. Nev. Oct. 5, 2020). The fact that reasonable jurists differ on the statute's language evidences its ambiguity. Whether the language is ambiguous or not, Chicago Title's interpretation would render the forum defendant rule impotent.

The purpose of the removal power is to "protect non-forum litigants from possible state court bias in favor of forum-state litigants." Gentile v. Biogen Idec, Inc., 934 F.Supp.2d 313, 319 (D. Mass. Feb. 21, 2013). Forum defendants are not at such a risk and their presence "presumably mitigates concerns of state-court bias toward the plaintiff." HSBC Bank, 508 F.Supp.3d at 789. The language regarding a defendant who is "properly joined and served" was added to the removal statute in 1948.

Exhibit 8
Page 3 of 5

*Gentile*, 934 F.Supp.2d at 319. The *Gentile* court's review of Supreme Court precedent at that time "suggests the purpose of the 'properly joined and served' language was to prevent plaintiffs from defeating removal through improper joinder of a forum defendant," not to give defendants a loophole to avoid the forum defendant rule. *Id.* at 319–20. Snap removal prior to service does not aid in preventing the defeat of removal through improper joinder.

The Court finds that adopting Chicago Title's interpretation of the statute would "undercut the clear purpose" of the forum defendant rule and encourage defendants to hijack a plaintiff's choice of forum by racing to remove prior to service. *Albertson's, Inc.*, 42 F.3d at 545. The Court will not apply the statute in a way that would "eviscerate the purpose of the forum defendant rule." *Mass. Mut. Life Ins. Co. v. Mozilo*, 2012 WL 11047336, *2 (C.D. Cal. June 28, 2012) (citation omitted). By remanding to state court, the Court "provides some measure of protection for a plaintiff's choice of forum" while interpreting the statute in favor of remand, as required. *HSBC Bank*, 508 F.Supp.3d at 789 (quoting *Gentile*, 934 F.Supp.2d at 319); *Gaus*, 980 F.2d at 566.

C. HSBC Bank Trustee is not Entitled to Attorney's Fees

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision to award attorney fees is left to the discretion of the court. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). "[A]bsent unusual circumstances, courts may award

attorney's fees under § 1447(c) only [when] the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 136. Therefore, courts in the Ninth Circuit assess the clarity of the relevant law to determine whether there was an objectively reasonable basis for removal. *See Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008) ("[T]he test is whether the relevant law clearly foreclosed the defendant's basis of removal.").

**5 HSBC Bank argues that Chicago Title has engaged in jurisdictional gamesmanship removing every title insurance case immediately after it is filed. HSBC Bank highlights the consensus among the District's judges that the tactic contorts the meaning and purpose of the removal statue. However, the propriety of snap removal is a contested issue with supporting caselaw that the Ninth Circuit has not ruled on. Because Chicago Title had an objectively reasonable basis for removal, the Court declines to award HSBC Bank the fees and costs it incurred because of the removal.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Remand (ECF #6) is **GRANTED.**

IT IS FURTHER ORDERED that Plaintiff's Motion for Attorney Fees (ECF #7) is **DENIED.**

**All Citations**

Slip Copy, 2022 WL 887324

**Footnotes**

1    See *Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp., Inc.*, 532 F.Supp.4d 1004, 1010–11 n.3 (D. Nev. 2021); *U.S. Bank Tr. Nat'l Ass'n v. Fidelity Nat'l Title Grp., Inc.*, No 2:20-cv-02068-JCM-VCF, 2021 WL 223384 (D. Nev. Jan. 22, 2021); *HSBC Bank USA, Nat'l Ass'n as Tr. for Certificateholders of ACE Secs. Corp. Home Equity Loan Tr., Series 2007-MW1, Asset-Backed Pass-through Certificates v. Fidelity Nat'l Title Grp., Inc.*, 508 F.Supp.3d 781 (D. Nev. 2020); *Wells Fargo Bank, N.A. as Tr. of Holders of Harborview Mortg. Loan Tr. Mort. Loan Pass-through Certificates, Series 2006-12 v. Fidelity Nat'l Title Grp., Inc.*, No. 2:20-cv-01849-APG-NJK, 2020 WL 7388621 (D. Nev. Dec. 15, 2020); *Deutsche Bank Nat'l Tr. Co. v. Fidelity Nat'l Title Grp., Inc.*, No. 2:20-cv-01606-APG-BNW, 2020 WL 7360680 (D. Nev. Dec. 15, 2020); *Sparks v. Mamer*, No. 2:20-cv-0661-KJD-VCF, 2020 WL 6820796 (D. Nev. Nov. 20, 2020).

Exhibit 8
Page 4 of 5

2022 WL 887324

[2]    See U.S. Bank, N.A. as Tr. to Wachovia Bank Nat'l Assoc. v. Fidelity Nat'l Title Grp., Inc., No. 2:21-cv-00339-GMN-VCF (D. Nev. Nov. 29, 2021).

[3]    One case disagrees with the other courts in the District and ruled that remand was improper. U.S. Bank, N.A. as Tr. to Wachovia Bank Nat'l Assoc. v. Fidelity Nat'l Title Grp., Inc., No. 2:21-cv-00339-GMN-VCF (D. Nev. Nov. 29, 2021).

---

**End of Document**                                        © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

Exhibit 8
Page 5 of 5

2021 WL 1311089
Only the Westlaw citation is currently available.
United States District Court, D. Montana,
Butte Division.

Catharine HUDGENS, individually and as
Personal Representative for the Estate of Lew
Hudgens, Plaintiff,
v.
HUSSEY PLUMBING OF BIG SKY, INC., et al.,
Defendants.

CV 21-24-BU-BMM
|
Signed 04/08/2021

**Attorneys and Law Firms**

Justin P. Stalpes, Beck, Amsden & Stalpes, PLLC, Bozeman, MT, for Plaintiff.

Jesse C. Medearis, Nicholas John Pagnotta, Williams Law Firm, Missoula, MT, for Defendants Hussey Plumbing of Big Sky, Inc., Justin Hussey, John Does 1-10.

Jesse C. Medearis, Williams Law Firm, Missoula, MT, for Defendant Keith Bergquist.

**ORDER**

Brian Morris, Chief District Judge

**BACKGROUND.**

*1 Plaintiff Catherine Hudgens originally filed suit in the Eighteenth Judicial District Court, Gallatin County, Montana. Doc. 1. After Plaintiff filed suit, but before Plaintiff served Defendants with process, Defendants removed this case to federal court. Courts have termed this procedural tactic a "snap removal." *U.S. Bank Nat'l Ass'n v. Fid. Nat'l Title Grp, Inc.*, 2021 WL 223384, at *1 (D. Nev. Jan. 22, 2021). Plaintiff filed a Motion to Remand. Doc. 4. Plaintiff argues that "the

forum defendant rule" in 28 U.S.C. § 1441(b)(2) bars Defendants from removing the case. Doc. 5 at 2.

**LEGAL STANDARD.**

Federal courts are courts of limited jurisdiction. *Owens Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Accordingly, a strong presumption exists against removal jurisdiction. *Deutsche Bank Trust Co. v. Fid. Nat'l Title Grp, Inc.*, 2021 WL 493410, at *1 (D. Nev. Feb. 10, 2021). Courts shall construe 28 U.S.C. § 1441(a) strictly. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Any doubt about the propriety of removal requires resolution in favor of remand. *Id.*

**ANALYSIS.**

Plaintiff moves to remand the case based on its claim that § 1441(b)(2) bars removal. Doc. 4. Section 1441(b)(2) states as follows:

> A civil action otherwise removeable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such an action is brought.

28 U.S.C. § 1441(b)(2). The Ninth Circuit has not addressed whether § 1441(b)(2) permits snap removal. District courts across the country remain largely divided over this issue. *See Gentile v. Biogen Idec, Inc.*, 934 F.Supp.2d 313, 317–18 (D. Mass. Feb 21, 2013) (collecting cases). District courts in the Ninth Circuit have not resolved uniformly recent snap removal cases. *See e.g.*, *Wells Fargo Bank, N.A. v. Old Republic Title Ins. Grp., Inc.*, 2020 WL 5898779, at *3 (D. Nev. Oct. 5, 2020) (remanding); *Carrington Mortg. Servs., LLC v. Ticor Title of Nev., Inc.*, 2020 WL 3892786, at *5 (D.

Exhibit 9
Page 1 of 2

Hudgens v. Hussey Plumbing of Big Sky, Inc., Slip Copy (2021)

2021 WL 1311089

Nev. July 10, 2020) (remanding); *Deutsche Bank Trust Co. v. Fid. Nat'l Title Grp, Inc.*, 2021 WL 493410, at *3 (D. Nev. Feb. 10, 2021) (remanding); *Zirkin v. Shandy Media, Inc.*, 2019 WL 626138, at *4 (C.D. Cal. February 14, 2019) (denying remand); *Monfort v. Adomani, Inc.*, 2019 WL 131842, at *4 (N.D. Cal. Jan. 8, 2019) (denying remand).

In *Deutsche Bank Trust Company (DBTC)*, the Nevada District Court concluded that snap removal was improper under 📙 § 1441(b)(2). 2021 WL 493410, at *3. The *DBTC* court determined that 📙 § 1441(b)(2) assumes that at least one party has been served, and thus, removing the case before any of the parties have been served proved improper. *Id.* (citing *Carrington Mortg. Servs., LLC*, 2020 WL 38992786, at *3).

The Court agrees with much of the *DBTC* Court's analysis. The language "properly joined and served" in 📙 § 1441(b)(2) sought to bar a plaintiff from preventing a non-forum defendant from removing a case because the plaintiff had joined fraudulently a forum defendant. *Deutsche Bank Trust Company*, 2021 WL 493410, at *2. In short, 📙 § 1441(b)(2) sought to thwart gamesmanship. *Id.* It makes little sense to embrace an interpretation of 📙 § 1441(b)(2) that limits gamesmanship by a plaintiff but provides a defendant with an avenue to conduct the same gamesmanship that 📙 § 1441(b)(2) sought to prevent.

**\*2** The record indicates that Plaintiff intended to serve Defendants contemporaneously to filing suit. Doc. 5. Plaintiff asserts that the delay in service resulted from COVID-19 procedures implemented at the Gallatin County Clerk of District Court's office. *Id.* at 2. On Thursday March 11, 2021, lawyers for Plaintiff brought the Complaint and three Summonses to the Clerk of Court's office for filing. Doc. 5-1 at 2. On Monday March 15, 2021, having not received copies of the Summonses, lawyers for Plaintiff scheduled an appointment with the Clerk of Court's office to obtain the copy of the

Summonses and deliver them to Defendants' registered agent. Doc. 5-2 at 2. In the days between, Defendants removed the case to federal court under 📙 § 1441(a).

Plaintiff did not fraudulently joined Defendants. Defendants are legitimate forum defendants, whom Plaintiffs have demonstrated a sincere intention in serving. The delay between filing and service proves modest, if not outright reasonable. The four days can be explained reasonably either by the Clerk of Court's office's COVID-19 precautions or that the four days fell on a weekend.

The Court reasonably cannot interpret 📙 § 1441(b)(2) to permit snap removal where the exists no fraudulently joined defendants. *See* ⚠️ *Gaus*, 980 F.2d at 566; *Deutsche Bank Trust Company*, 2021 WL 493410, at *3. To interpret 📙 § 1441(b)(2) as such would turn state court complaints, in effect, into starter pistols, where upon filing, defendants race to remove a case before plaintiffs serve process. In an era of global pandemics and weekends, some delay in service can be reasonable. The Court has better uses for its time and resources than refereeing petty procedural footraces. Defendants seek improperly to evade the removal limitations imposed by 📙 § 1441(b)(2).

**IT IS HEREBY ORDERED**:

1. Plaintiff's Motion to Remand (Doc. 4) is **GRANTED**.

2. This case is remanded to the Montana Eighteenth Judicial District Court, Gallatin County, for further proceedings.

**All Citations**

Slip Copy, 2021 WL 1311089

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 9
Page 2 of 2

2019 WL 5080340
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Kayla JONES
v.
KLLM TRANSPORT SERVICES, LLC, et al.

Case No. EDCV 19-1617 JGB (SHKx)
|
Filed 10/10/2019

**Attorneys and Law Firms**

Harold Wayne Green, Anna Tran, Anna You, Lexton Law Firm, Irvine, CA, for Kayla Jones.

Stephen B. Heath, Matthew J. Kracht, Steven W. Yuen, Heath and Yuen APC, San Francisco, CA, for KLLM Transport Services, LLC, et al.

**Proceedings: Order (1) GRANTING Plaintiff Kayla Jones's Motion to Remand (Dkt. No. 14); (2) AWARDING Plaintiff $1,800 in Attorneys' Fees; and (3) VACATING the October 21, 2019 Hearing (IN CHAMBERS)**

The Honorable JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Plaintiff Kayla Jones's Motion to Remand. ("Motion," Dkt. No. 14.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of, and in opposition to the Motion, the Court GRANTS the Motion and AWARDS Plaintiff $1,800 in attorneys' fees. The hearing scheduled for October 21, 2019 is VACATED.

## I. BACKGROUND

On April 30, 2019, Plaintiff Kayla Jones ("Plaintiff") filed her complaint against Defendants KLLM Transport Services, LLC ("KLLM"), Gregory Bell ("Bell")

(collectively, "Defendants"), and Does 1–50 and in the Superior Court for the County of San Bernardino. ("Complaint," Dkt. No. 1-1.) The Complaint alleges personal injury claims arising out of a vehicle collision. (Id.) Plaintiff served KLLM on July 19, 2019. (Dkt. No. 14 at 13.) Plaintiff has not yet served Gregory Bell. (Id. at 10.)

Defendants removed the action to this Court on August 23, 2019. ("Notice of Removal," Dkt. No. 1.) Defendants assert diversity jurisdiction. (Id.) Plaintiff filed the Motion on September 17, 2019. (Motion.) In support of the Motion, Plaintiff filed the Declaration of Anna You with Exhibits A–C. ("You Declaration," Dkt. No. 14 at 9–26.) Defendants opposed the Motion on September 26, 2019. ("Opposition," Dkt. No. 16.) In support of the Opposition, Defendants filed the Declaration of Matthew J. Kracht with Exhibits A–C. ("Kracht Declaration," Dkt. No. 16-1.) Plaintiff filed her reply on October 4, 2019 with a second Declaration of Anna You. ("Reply," Dkt. No. 17; "You Reply Declaration," Dkt. No. 17-1.)

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a Defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

The right to remove is not absolute, even where original jurisdiction exists. A defendant may not remove on diversity jurisdiction grounds "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such an action is brought." 28 U.S.C. § 1441(b)(2). And a defendant must remove "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(b).

Exhibit 10
Page 1 of 3

Jones v. KLLM Transport Services, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 5080340

Moreover, the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Jackson v. Specialized Loan Servicing, LLC*, 2014 WL 5514142, *6 (C.D. Cal. Oct. 31, 2014). The court must resolve doubts regarding removability in favor of remanding the case to state court. *Id.*

### III. DISCUSSION

**\*2** Plaintiff seeks remand, arguing the Notice of Removal is deficient. First, she argues the Notice of Removal is untimely because it was filed more than thirty days after Plaintiff served KLLM. (Motion at 3–4.) Second, she argues that the Notice of Removal fails to allege diversity of citizenship because it makes "no allegation regarding Plaintiff's citizenship" and alleges "only that Bell is 'a resident of Texas.'" (Motion at 5; Notice of Removal at 2.) And third, she argues that the Notice of Removal fails to establish the requisite $75,000 in controversy, stating only that the amount "exceeds $25,000." (Motion at 4; Notice of Removal at 2.)

The Court agrees—the Notice of Removal is wholly deficient. It is Defendants' burden to file a notice with "a plausible allegation" that diversity of citizenship exists and "that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). And a notice that neither alleges the plaintiff's citizenship nor makes even a conclusory statement that there is more than $75,000 in controversy fails to make a plausible allegation that the Court has original jurisdiction. Although Defendants attempt to establish in the Opposition that the amount in controversy is over $75,000, they make no allegations regarding Plaintiff's citizenship. (*See* Opposition at 3–5.) It is Defendant's burden to establish diversity of citizenship, and without information regarding Plaintiff's citizenship, it is impossible for Court to conclude that diversity of citizenship exists.[1] That alone is reason to remand.

Moreover, removal of this action is improper pursuant to the Forum Defendant Rule, which limits removal based on diversity where one of the defendants "properly joint and served" is a citizen of the state in which the action was originally filed. *See* 28 U.S.C. § 1441(b)(2). Because "[r]emoval based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court" there is no need for it "in cases where the defendant is a citizen of the state in which the case is brought." *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006).

Plaintiff alleges that Bell is a citizen of California, the state where the action was originally filed. (Motion at 5–6.) Defendants do not dispute Bell's citizenship but argue that the Forum Defendant Rule should not apply because "Plaintiff had not yet served Mr. Bell when [Bell] removed this case to federal court." (Opposition at 4.) Defendants rely on *Zirkin v. Shandy Media, Inc.*, in which Judge Otis Wright of the Central District held that the plain language of § 1441(b)(2), namely "properly joined and served," precludes application of the Forum Defendant Rule where a defendant removes the case before he is served. *See* 2019 WL 626138, at *2 (C.D. Cal. Feb. 14, 2019). But other lower courts—including other courts in the Central District—have held that "such a reading" of the statute "would 'eviscerate the purpose of the Forum Defendant Rule.'" *Massachusetts Mut. Life Ins. Co. v. Mozilo*, 2012 WL 11047336, at *2 (C.D. Cal. June 28, 2012) (quoting *Sullivan v. Novartis Pharmastein AG*, 575 F. Supp. 2d 640, 645 (D.N.J. 2008)); *see also Khashan v. Ghasemi*, 2010 WL 1444884, at *2 (C.D. Cal. Apr. 5, 2010) (The "'properly joined and served' language of § 1441(b) does not prevent a finding that the removal was procedurally defective."); *Standing v. Watson Pharm.*, 2009 WL 842211, *5 (C.D. Cal. Mar. 26, 2009) (Joined and served requirement "is not implicated where the non-forum defendant (or forum defendant) seeks to remove the action prior to the service of any defendant.").

**\*3** The Court joins those courts who have held that "joined and served" is not a loophole for an in-state defendant to remove a case before he has been properly served. A defendant who has yet to be served has a choice whether to participate in the case. And if he chooses to participate by disturbing the plaintiff's choice of forum and removing to federal court, his citizenship should be considered just as that of a defendant who has been served. Any other reading of the statute would encourage gamesmanship and undercut § 1441(b)'s purpose of limiting diversity removal when the defendant is already at home. *See Albertson's, Inc. v. Comm'r*, 42 F.3d 537, 545 (9th Cir. 1994) (holding that a court "may not adopt a plain language interpretation of a statutory

Exhibit 10
Page 2 of 3

Jones v. KLLM Transport Services, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 5080340

provision that directly undercuts the clear purpose of the statute."). Accordingly, the Court concludes that as a California citizen, Bell is not entitled to remove a case originally filed in California state court.

### IV. ATTORNEYS' FEES

Plaintiff seeks reasonable expenses incurred as a result of Defendants' improper removal, including $2,550 in attorneys' fees. (Motion at 6.) Defendants do not object. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Plaintiff's Counsel asserts that "Plaintiff has incurred $2,550.00 in attorney [sic] fees," which "includes 8.5 hours at $300/hour to draft the Motion to Remand and appear for the hearing." (You Declaration ¶ 7.) Because the Court vacates the hearing, Plaintiff cannot recover fees associated with it. The Court determines that six hours at $300/hour is a reasonable for time spent drafting the Motion, the You Declaration, the Reply, and

the You Reply Declaration. Accordingly, the Court AWARDS $1,800 in attorneys' fees to Plaintiff.

### V. CONCLUSION

For the reasons set forth above, the Court:

  1. GRANTS the Motion to Remand;

  2. AWARDS $1,800 in attorneys' fees to Plaintiff; and

  3. VACATES the October 21, 2019 hearing.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5080340

### Footnotes

[1]   In the Reply, Plaintiff argues for the first time that she is a citizen of California. (Reply at 3.) She also argues that because the KLLM is an LLC, it must allege the citizenship of every owner or member—which it has failed to do. (Id.) But "the district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

---

End of Document                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

Exhibit 10
Page 3 of 3

2012 WL 11047336
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

MASSACHUSETTS MUTUAL LIFE INSURANCE
COMPANY
v.
Angelo MOZILO et al.

No. 2:12–cv–03613–MRP–MAN.
|
Signed June 28, 2012.

**Attorneys and Law Firms**

Harry A. Olivar, Jr., Molly C. Stephens, Quinn Emanuel Urquhart Oliver and Hedges LLP, Los Angeles, CA, for Plaintiff.

A. Matthew Ashley, Allison Lauren Libeu, David Siegel, Mytili Gowri Bala, Irell and Manella LLP, Joel M. Athey, Corbin Fitzgerald and Martinez LLP, Los Angeles, CA, Michael C. Tu, Frank M. Scaduto, Michael D. Torpey, Orrick Herrington and Sutcliffe LLP, San Francisco, CA, Brandon F. White, Matthew Edward Miller, Nicholas C. Theodorou, Foley Hoag LLP, Boston, MA, for Defendants.

**Opinion**

MARIANA R. PFAELZER, Senior District Judge.

*\*1* Courtroom Clerk, Cynthia Salyer.

This case was removed from Los Angeles Superior Court on the basis of diversity jurisdiction. ECF No. 1. Plaintiff filed a timely motion to remand on the grounds that the "forum defendant" rule articulated in 28 U.S.C. § 1441(b)(2) prohibits removal. ECF No. 19. The Court hereby **GRANTS** that motion and **REMANDS** this case to Los Angeles Superior Court.

Plaintiff filed the Complaint in Los Angeles Superior Court on April 20, 2012. ECF No. 1. On April 23, 2012, Plaintiff emailed a copy of the Complaint to Defendants' counsel and requested that counsel accept service on behalf of their respective clients. Stephens Decl. Ex. B. On April 26, 2012, Defendants filed the Notice of Removal. ECF No. 1. Defendants accepted service the

next day, on April 27, 2012. Stephens Decl. Ex. B.

The forum defendant rule provides that, "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). The sole basis for removal was diversity jurisdiction, and Defendants are all residents of California. The only question is whether the "properly joined and served" language prevents the application of the forum defendant rule in this case.

Courts are split on this issue, and each side presents a compelling argument. On its face, 28 U.S.C. § 1441(b) only applies when the forum defendant has been "properly joined and served." *Id.* Plaintiff argues that the "and served" requirement does not apply where, as here, the defendants removed the case before the plaintiff could possibly have served the defendant. Some courts have found dispositive the plain meaning of the "properly joined and served" language. *See Regal Stone Ltd. v. Longs Drug Stores California, L.L.C.,* 11–4540 SC, 2012 WL 685756, at \*4 (N.D.Cal. Mar.2, 2012) (Plaintiff's proposed reading "would improperly discard pivotal parts of the statute as mere surplusage."). Other courts, including at least two in this district, have held that the "properly joined and served" language is meant to prevent fraudulent joinder, and that the language is therefore not implicated when a defendant that is properly in the case manages to file its notice of removal before the plaintiff is able to effect service. *Khashan v. Ghasemi,* CV10–0543MMM(CWX), 2010 WL 1444884, at \*2 (C.D.Cal. Apr. 5, 2010) (The " 'properly joined and served' language of § 1441(b) does not prevent a finding that the removal was procedurally defective."); *Standing v. Watson Pharm.,* CV 09–0527 DOC (AN x), 2009 WL 842211, \*5 (C.D.Cal. Mar. 26, 2009) (Joined and served requirement "is not implicated where the non-forum defendant (or forum defendant) seeks to remove the action prior to the service of any defendant."); *see also Sullivan v. Novartis Pharmastein AG,* 575 F.Supp.2d 640, 645 (D.N.J.2008) ( "Indeed, it is inconceivable that Congress, in adding the 'properly joined and served' language, intended to create an arbitrary means for a forum defendant to avoid the forum defendant rule simply by filing a notice of removal before the plaintiff is able to effect process.").

*\*2* The debate is well-developed in *Regal Stone, Khasan,*

Exhibit 11
Page 1 of 2

2012 WL 11047336

and *Standing,* and the Court need not rehash it here. The Court agrees with the cogent analysis in *Khasan* and *Standing.* The plain meaning of the statute would permit removability to turn on the timing of service rather than the diversity of the parties. Such a reading would "eviscerate the purpose of the forum defendant rule." *Sullivan,* 575 F.Supp.2d at 646–7. The Court "may not adopt a plain language interpretation of a statutory provision that directly undercuts the clear purpose of the statute." *Albertson's, Inc. v. Comm'r,* 42 F.3d 537, 545 (9th Cir.1994). For the reasons set out in *Khasan* and

*Standing,* the Court hereby **GRANTS** Plaintiff's motion and **REMANDS** this action to Los Angeles Superior Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 11047336

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 11
Page 2 of 2

2021 WL 1910885
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Tacoma.

Christopher PRATT, Plaintiff,
v.
ALASKA AIRLINES, INC., Defendant.

CASE NO. 2:21-CV-84-DWC
|
Signed 05/12/2021

**Attorneys and Law Firms**

Damien N. Villarreal, Damien Villarreal LLC, Seattle, WA, Gregory M. Skidmore, Vera Fomina, Skidmore & Fomina, PLLC, Bellevue, WA, for Plaintiff.

Danielle Marie Kays, Pro Hac Vice, Seyfarth Shaw, Chicago, IL, Molly Gabel, Seyfarth Shaw LLP, Seattle, WA, for Defendant.

AMENDED ORDER GRANTING MOTION TO REMAND

David W. Christel, United States Magistrate Judge

**\*1** This matter comes before the Court on Plaintiffs' Motion to Remand this case to state court. Dkt. 19. Defendant objects. Dkt. 24. For the reasons discussed below the Court grants Plaintiff's motion.

BACKGROUND

Plaintiff, Christopher Pratt (Plaintiff), is a former employee of Defendant Alaska Airlines (Defendant). Plaintiff is a resident of California, and Defendant is a resident of both Washington and Alaska. Dkt. 1-1; Dkt. 2 at 2.

On January 20, 2021, Plaintiff filed a Complaint with the King County Superior Court in Seattle alleging two state-law claims: (1) wrongful termination in violation of public policy; and, (2) retaliation in violation of RCW 49.60. Dkt. 1-1. The case was assigned case number 21-2-00905-7 SEA. Dkt. 10. Two days later, on January 22, 2021, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 128(b). Dkt. 1. At the time Defendant filed the notice of removal no service had occurred on Defendant, nor had Defendant waived service and voluntarily appeared in the state court action. Dkt. 2 at 1.

On February 22, 2021, Plaintiff filed the instant Motion to Remand. Dkt. 19. On March 22, 2021, Defendant filed a response in opposition. Dkt. 24. On March 26, 2021, Plaintiff filed a reply. Dkt. 26.

REQUEST FOR ORAL ARGUMENT

The parties requested oral argument. Dkt. 19 (Motion); Dkt. 24 (Response caption). The Court has reviewed the Motion, the Response, the Reply, and the relevant record and has determined oral argument is unnecessary. Therefore, the Court denies the requests for oral argument.

STANDARDS

Federal courts are courts of limited jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Accordingly, there is a strong presumption against removal jurisdiction. Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009). Under the removal statute, a defendant may remove any civil action over which the federal district court has original jurisdiction. 28 U.S.C. § 1441(a).

Once a defendant receives "a copy of an amended pleading, motion, order or other paper from which it can determine that the case is removable," the defendant has thirty days to file a notice of removal. Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006) (quoting 28 U.S.C. § 1446(b)(2)).

A plaintiff can challenge removal with a motion to remand. 28 U.S.C. § 1447(c). When removal is based on diversity jurisdiction, the removing defendant must show by a preponderance of the evidence that there is complete diversity and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The court will resolve all ambiguities in favor of remand. Hunter, 582 F.3d at 1042.

Exhibit 12
Page 1 of 6

Under the Forum Defendant Rule a diversity case cannot be removed if "any of the parties in interest properly joined and served as defendants is a citizen of the [s]tate in which such action is brought." 28 U.S.C. § 1441(b)(2)[1]; *see also Lively v. Wild Oats Mkts., Inc.,* 456 F.3d 933, 939 (9th Cir. 2006). Plus, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

DISCUSSION

**\*2** The issue presented by this case is whether "snap removal," where a defendant removes a case to federal court before any defendant has been properly served, contravenes the Forum Defendant Rule, which confines removal on the basis of diversity jurisdiction[2] to instances where no defendant is a citizen of the forum state.

Plaintiff urges the view that a defendant who is a citizen of the forum state (such as here, where Defendant is a citizen of Washington) should be prohibited from removing on the basis of diversity jurisdiction, before service is perfected, just as that defendant is prohibited from removing post-service. Dkt. 19 at 3, 5. According to Plaintiff, "snap removal" frustrates the removal statute's purpose "of preserving a plaintiff's choice of a state court forum when suing a proper forum defendant." *Id.* at 5-6.

Defendant does not dispute the relevance of the Forum Defendant Rule, but maintains it does not apply in this case because no defendant has been "properly joined and served." Dkt. 24 at 4. Defendant argues the rule's only function pre-service is to prevent a plaintiff from fraudulently joining a resident defendant in order to defeat diversity. Dkt 24 at 4, 6-7. Defendant urges this court to apply a purely textual treatment to the language of 28 U.S.C. § 1441(b), and leave it to Congress to make changes should it so choose. Dkt. 24 at 7.

Though there is no binding precedent from the Supreme Court or the Ninth Circuit, this Court is far from the first to consider this issue, as The Honorable James L. Robart recently noted. *See Breuer v. Weyerhaeuser NR Company,* NO. 20-0479-JLR, 2020 WL 4260948 (W.D. Wash. July 24, 2020). In *Breuer,* Plaintiff filed suit against Weyerhaeuser—a Washington corporation—in King County Superior Court, alleging violations of the Washington Products Liability Act, RCW 7.72 *et seq. Id.* at \*1. Plaintiffs' counsel then emailed Weyerhaeuser's counsel asking if it would accept service (and enclosing a copy of the complaint and summons). *Id.* Instead of accepting service, Weyerhaeuser's counsel filed a notice of removal the next day. *Id.* Plaintiff moved to remand,

but quickly withdrew that motion and filed a motion to voluntarily dismiss the case with the intent to refile in state court. *Id.* As Plaintiff notes, the case at bar trekked a similar procedural path. Dkt. 26 at 5.

Although Judge Robart did not enter an order on the motion for remand, he had occasion to consider the practice of "snap removal" because Weyerhaeuser argued Plaintiff's pivot to a motion to dismiss was an attempt to "avoid a near-certain adverse ruling" on its withdrawn motion to remand. *Id.* at \*4.

Judge Robart wrote:

> Snap removal is a controversial procedure and its compliance with the removal statute, 28 U.S.C. § 1441, is questionable. *See Schachmurove,* supra, at 214. Moreover, Weyerhaeuser's position appears to be the minority view among the courts that have ruled on the matter. *See id.* at 207 ("At present, an apparent majority prohibits this pre-service removal tactic in the face of tenacious protests by a passionate minority."); *see also Hawkins v. Cottrell, Inc.,* 785 F. Supp. 2d 1361, 1378 (N.D. Ga. 2011) ("The 1948 changes to the removal statute were ... not intended to allow a forum defendant who had not been served to remove an action."); *but see Colo. Seasons, Inc. v. Friedenthal,* No. LA CV 19-09050 JAK (FFMx), 2020 U.S. Dist. LEXIS 84645, \*8 (C.D. Cal. May 13, 2020) ("Permitting snap removal does not necessarily cause an absurd result. Nor is it contrary to the clearly expressed intent of Congress."). Thus, Weyerhaeuser's contention that "[g]ranting this motion will undermine the authority [it] cited in its opposition to the motion for remand" is unconvincing and, more importantly, fails to establish any plain legal prejudice.

**\*3** *Id.* at \*4 (footnote omitted).

Defendant argues that Judge Robart's "dicta" actually reflects an outdated analysis "based only on a law review article written before recent circuit courts of appeals decisions finding that 'snap removal' is proper under the removal statutes."[3] In fact, this law review article—published in February 2019—provides a comprehensive collection and discussion of relevant case law, including at least one of the cases Defendant relies on. *See* Amir Schachmurove, Making Sense of the Resident Defendant Rule, 52 U.C. Davis L. Rev. Online 203 (2019). The article correctly states that Defendant's position is the minority view, with the majority of courts finding "snap removal" untenable. It explains, in part:

> In accordance with the denotation likely to be found in any authoritative dictionary,[4] the use of "any" in §

Exhibit 12
Page 2 of 6

Pratt v. Alaska Airlines, Inc., Slip Copy (2021)

2021 WL 1910885

1441(b)(2) implies the existence of at least one defendant that is a party in interest and that has been properly joined and served;[5] this adjective's predecessor — the pronoun "none" — insinuated the same. Logically, "[w]ithout this precondition for removal," the utilization of either "any" or "none" would be "superfluous."[6] Textually, therefore, 🏷️ § 1441 suspends operation of the Home State Defendant Rule until appropriate joinder and service on at least one resident defendant has taken place by virtue of its reliance on the indefinite pronoun "any."[7] Until that explicitly designated action's first consummation, however, 🏷️ § 1441(b)'s unadorned text "allows removal by a non-forum defendant prior to service on a forum defendant,"[8] and cannot proscribe "removal even by a forum defendant prior to service."[9] Accordingly, so long as no defendant has been served at the time of removal, the Resident Defendant Rule is irrelevant — or so some within the majority asseverate.[10]

*Id.* at 218-19 (footnotes re-numbered); *see also Deutsche Bank Trust Co. v. Fid. Nat'l Title Group*, Case No. 2:20-CV-2220 JCM, 2021 WL 493410, at *3 D. Nev. February 10, 2021(finding that 🏷️ Section 1441(b)'s use of the word "any" in "any parties in interest properly joined and served" necessarily means "that the [removal] statute assumes at least one party has been served"); 🏷️ *U.S. Bank Trustee National Assoc. v. Fid. Nat'l Title Group*, Case No. 2:20-CV-2068 JCM, 2021 WL 223384, at *3 D. Nev. January 22, 2021(same).

**\*4** This approach is consistent with Supreme Court guidance on statutory interpretation, generally, which cautions against interpreting statutory text in a "vacuum," in favor of a "holistic" approach that includes "context, along with purpose and history." 🏷️ *Gundy v. United States*, —— U.S. ——, 139 S. Ct. 2116, 2126, 204 L.Ed.2d 522 (2019) (citing 🏷️ *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)).

For the reasons explained above, this Court finds the meaning of the text of 🏷️ Section 1441(b)(2)[11] is clear and unambiguous. The word "any" in "any parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought," means at least one defendant must have been properly served before an out-of-state defendant can remove a state court case to federal court on the basis of diversity jurisdiction. This also means "snap removal" is not consistent with the text, history, and purpose of the Forum Defendant Rule.

The purpose of the Forum Defendant Rule was to prevent

in-state defendants from removing state court cases to federal court because, at least in theory, they are not vulnerable to local prejudice against nonresidents in the same way out-of-state litigants may be. *See e.g.* 🏷️ *Hertz Corp. v. Friend*, 559 U.S. 77, 85, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010)(finding "diversity jurisdiction's basic rationale [was] opening the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties")(citing S. Rep. No. 530, 72d Cong., 1st Sess., 2, 4–7 (1932)); *see also* 🏷️ *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1369 (N.D. Ga. 2011)(concluding, after an exhaustive review of removal statutes and the relevant legislative history, that "from the inception of the removal statute, a forum defendant has never been allowed to remove a diversity action."); *see also* 🏷️ *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006)(finding Congress' general intent for allowing removal based on diversity jurisdiction is to protect out-of-state defendants from possible prejudices in state court); *see also* Judiciary Act of 1789, 1 Stat. 73, 79.

In its original form the rule created potential for abuse by plaintiffs, who could name an in-state defendant simply to prevent removal, without intending to prosecute the case against them. 🏷️ *Pullman Co. v. Jenkins*, 305 U.S. 534, 541, 59 S.Ct. 347, 83 L.Ed. 334 (1939). Thus, in 1948, Congress added the "properly joined and served" language "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom the plaintiff does not intend to proceed," also known as a "fraudulently joined defendant." 🚩 *Sullivan v. Novartis Pharm. Corp.*, 575 F. Supp. 2d 640, 645 (D.N.J. 2008) (referring to H.R. Rep. No. 3214 at A346 (1947)).

With the advent of electronic case filing—something the 1948 Congress could not have foreseen—forum defendants saw an opportunity to notice removal to federal court before any defendant had been served. When plaintiffs pushed back, these defendants began justifying the practice with the same arguments Defendant presents here, including that Congress implicitly sanctioned the practice by choosing to remain silent on the issue when passing the Federal Courts' Jurisdiction and Venue Clarification Act of 2011. *See* H.R. 394, 112th Cong. § 101-103 (2022-2012); *but see Breitweiser v. Chesapeake Energy Corp.*, NO. 3:15–CV–2043–B 2015, WL 6322625, at *5 (N.D. Tex. Oct. 20, 2015)(determining that Congress's failure to revisit the forum-defendant rule in the Federal Courts' Jurisdiction and Venue Clarification Act of 2011 is at best inconclusive regarding whether it sought to take a position on "snap removal"); *see also* 🏷️ *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353 n. 5, 119 S.Ct. 1322,

Exhibit 12
Page 3 of 6

143 L.Ed.2d 448 (1999)(noting that Congress did not intend to allow removal prior to service of the summons even though the defendant had received an electronic copy of the complaint via fax because "it is evident ... that Congress could not have foreseen the situation posed by this case" as there were no facsimile transmissions [at that time]); *see also Bowman v. PHH Mortg. Corp.*, 423 F. Supp. 3d 1286, 1292 (N.D. Ala. 2019) (citing *Sullivan*, 575 F. Supp. 2d at 645–46 (finding it would be "absurd" and "could not have been intended by Congress" to allow in-state defendants to remove based on "the timing of service")).

**\*5** Defendant's view not only ignores the existence of the pronoun "any," it also fails to consider the importance of purpose and history in statutory interpretation. Dkt. 24 at 9-10. The cases upon which Defendant relies similarly overlook the pronoun "any", and fail to consider the nuances in the purpose and history of the Forum Defendant Rule. *See e.g. Encompass*, 902 F.3d at 153 (concluding "Congress' inclusion of the phrase "properly joined and served" addresses a specific problem — fraudulent joinder by a plaintiff — with a bright-line rule."); *Gibbons*, 919 F.3d 706 (speculating that "Congress may well have adopted the 'properly joined

and served' requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant."); *Texas Brine*, 955 F.3d at 486 (dismissing plaintiff's purpose argument, and appearing to accept defendant's argument that "there is no meaningful legislative history of the 'properly joined and served' language).

In sum, this Court now joins the many other courts that have found "snap removal" is not consistent with the text, history, and purpose of the Forum Defendant Rule[12].

CONCLUSION

Plaintiff's Motion to Remand (Dkt. 19) is granted. This case is REMANDED to the King County Superior Court in Seattle, from where it was improperly removed.

**All Citations**

Slip Copy, 2021 WL 1910885

**Footnotes**

1    Section 1441(b)(2), also known as the Forum Defendant Rule, reads is full: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *See Infutria Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011) (referring to this rule as the "forum defendant rule").

2    Diversity jurisdiction exists if no plaintiff is a citizen of the same state as any defendant, and the amount in controversy exceeds $75,000.   28 U.S.C. § 1332(a).

3    Dkt. 24 at 9 (citing *Encompass Ins. Co. v. Stone Mansion Restaurant Incorp.*, 902 F.3d 147, 152 (3rd Cir. 2018)(finding the "language of the forum defendant rule in section 1441(b)(2) is unambiguous ... and [w]here the text of a statute is unambiguous, the statute should be enforced as written and only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language."); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2nd Cir. 2019)(" Section 1441(b)(2) "[b]y its text" does not apply "until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."); and *Texas Brine Co. LLC v. Am. Arbitration Ass'n. Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) (holding that the plain meaning of the statute permits a forum defendant's removal until plaintiff has properly joined and served defendant)).

4    Any, OXFORD DICTIONARY OF ENGLISH (3d ed. 2010).

Exhibit 12
Page 4 of 6

Pratt v. Alaska Airlines, Inc., Slip Copy (2021)

2021 WL 1910885

5    *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1369-73 (N.D. Ga. 2011); *see also, e.g., Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) (remanding case that out-of-state defendant had sought to remove based on diversity because forum defendant had already been served at the time of removal); *Ott v. Consol. Freightways Corp. of Del.*, 213 F. Supp. 2d 662, 665-67 (S.D. Miss. 2002) (allowing out-of-state defendant to remove action because forum defendant had not been served at the time of removal).

6    *Gentile v. BioGen IDEC, Inc.*, 934 F. Supp. 2d 313, 317 (D. Mass. 2013).

7    *See, e.g., Valido-Shade v. Wyeth, LLC* (*In re Diet Drugs*), 875 F. Supp. 2d 474, 477-78 (E.D. Pa. 2012) (observing that this language "was designed to allow removal where a plaintiff simply named an in-state defendant to preclude removal and had no intention of serving or pursuing that defendant in the lawsuit"); *Carrs v. AVCO Corp.*, No. 3:11-CV-3423-L, 2012 WL 1945629 at *2, 2012 U.S. Dist. LEXIS 74562 at *5-6 (N.D. Tex. May 30, 2012)("[T]he provision simply means that a case cannot be removed to federal court if any party in interest is properly joined and served as a defendant, and that defendant is a citizen of the state in which the lawsuit is brought."); *Regal Stone Ltd. v. Longs Drug Stores Cal., LLC*, 881 F. Supp. 2d 1123, 1126 (N.D. Cal. 2012) ("[T]he clear and unambiguous language of the statute only prohibits removal after a properly joined forum defendant has been served."); *Watanabe v. Lankford*, 684 F. Supp. 2d 1210, 1219 (D. Haw. 2010) (rejecting application of rule in a case in which an out-of-state defendant removed an action filed by a plaintiff who could have served the properly joined in-state defendant immediately after filing the complaint but chose not to do so).

8    *Gentile*, 934 F. Supp. 2d at 317; *see also Ripley v. Eon Labs, Inc.*, 622 F. Supp. 2d 137, 141-42 (D.N.J. 2007) (finding that the plain language of § 1441(b) did not bar the defendants' removal in this case because, at the time that the action was removed, they had not yet been "properly joined and served").

9    *Gentile*, 934 F. Supp. 2d at 317; *see also, e.g., Munchel v. Wyeth LLC*, No. 12-906-LPS, 2012 WL 4050072 at *3-5, 2012 U.S. Dist. LEXIS 128971 at *9-14 (D. Del. Sept. 11, 2012) (setting forth the reasons for favoring this reading); *Khashan v. Ghasemi*, CV10-00543MMM(CWX), 2010 WL 1444884, at *2, 2010 U.S. Dist. LEXIS 35772, at *7-14 (C.D. Cal. Apr. 5, 2010)(concluding that § 1441(b) is not implicated where the non-forum defendant (or forum defendant) seeks to remove the action prior to the service of any defendant).

10   *Oxendine v. Merck & Co.*, 236 F. Supp. 2d 517, 524 (D. Md. 2002) (citing, as examples, *Wensil v. E.I. Du Pont De Nemours & Co.*, 792 F. Supp. 447, 448 (D.S.C. 1992); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001); *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002)).

11   *See supra* note 1.

12   *See e.g., Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 548–556 (S.D. W. Va. 2015) (noting split of authority and holding removal by unserved forum defendants is barred by forum defendant rule, at least when all defendants are residents of forum state); *Little v. Wyndham Worldwide Operations, Inc.*, 251 F. Supp. 3d 1215, 1218–1223 (M.D. Tenn. 2017) (based on statutory scheme, court finds "permitting snap removals when a forum defendant is sued runs counter to the reasons underlying the forum defendant rule and is not a result Congress could have envisioned, let alone countenanced, when it enacted the rule to protect out of state defendants from local juries"); *Harrison v. Wright Med. Tech., Inc.*, No. 2:14–cv–02739–JPM–cgc., 2015 WL 2213373 (W.D. Tenn. May 11, 2015) (collecting cases and holding that forum defendant may not avoid removal bar by filing for removal prior to service); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, No. 2:11-cv-2226 (E.D. Ky. July 17, 2012) (in state defendant cannot avoid statutory prohibition against removal by removing case before service); *Ethington v. General Elec. Co.*, 575 F. Supp. 2d 855, 860–864 (N.D. Ohio 2008)(collecting cases);

Exhibit 12
Page 5 of 6

*Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007) (allowing unserved forum defendant to remove diversity action would "frustrate the consistent efforts of both Congress and the courts to determine diversity jurisdiction based on the genuine interests of the parties to the controversy" and would "provide a vehicle for defendants to manipulate the operation of the removal statutes"); *Perez v. Forest Labs., Inc.,* 902 F. Supp. 2d 1238, 1242–1246 (E.D. Mo. 2012) (collecting cases, holding pre service removal is inconsistent with fundamental purposes of removal and forum defendant rule and violates that rule, disagreeing with district court decisions permitting removal); *Lozano v. CSM Bakery Prods. NA*, No. CV 16-05736 BRO, 2016 WL 5746339, at *4 C.D. Cal. Sept. 30, 2016 (presence of unserved forum defendant rendered removal by out of state defendant improper); *United States Bank Nat'l Ass'n v. Martin*, No. 15-00061 DKW-BMK, 2015 WL 2227792 (D. Haw. Apr. 23, 2015) (forum defendant rule precluded removal by unserved forum defendant); *Lone Mt. Ranch, LLC v. Santa Fe Gold Corp.*, 988 F. Supp. 2d 1263, 1266–1267 (D.N.M. 2013) (noting split of authority and holding that forum defendant rule bars removal even if resident defendant was not served prior to removal, at least as long as forum defendant was not fraudulently joined and plaintiff was not dilatory in serving forum defendant after removal notice was filed).

---

**End of Document**                                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 842211

🟡 KeyCite Yellow Flag - Negative Treatment
Distinguished by May v. Haas, E.D.Cal., October 16, 2012

2009 WL 842211
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

Monika STANDING, et. al., Plaintiff(s),
v.
WATSON PHARMACEUTICALS INC., et. al.,
Defendant(s).

No. CV09-0527 DOC(ANx).
|
Los Angeles County Superior Court Case No.
BC405990.
|
March 26, 2009.

West KeySummary

1    **Removal of Cases**🔑Improper or Collusive
     Joinder of Parties
     **Removal of Cases**🔑Want of Jurisdiction or of
     Cause for Removal
     **Removal of Cases**🔑Evidence

     A non-forum subsidiary company failed to meet
     its burden of demonstrating that a forum
     subsidiary and its parent company were
     fraudulently joined to defeat diversity
     jurisdiction, in an action for strict products
     liability, negligence, and breach of warranty.
     The parents of a patient who used a fentanyl
     patch manufactured by the companies presented
     evidence that the forum subsidiary was involved
     in the manufacturing of the patches. The parents
     also presented evidence that, on the parent
     company's website, it listed fentanyl patches in
     its online product database. Therefore, the
     parents' motion to remand was granted.

**Attorneys and Law Firms**

Charles W. Miller, Eric D. Pearson, James Craig Orr, Jr.,
Michael Heygood, Heygood Orr Reyes Pearson &
Bartolomei, Dallas, TX, Daniel S. Robinson, Mark P.
Robinson, Jr., Michelle M. West, Robinson Calcagnie and
Robinson, Newport Beach, CA, for Plaintiff(s).

Eva M. Weiler, Frank C. Rothrock, Shook Hardy &
Bacon LLP, Irvine, CA, Jeffrey F. Peck, Joseph P.
Thomas, Ulmer & Berne LLP, Cincinnati, OH, for
Defendant(s).

ORDER GRANTING MOTION TO REMAND AND
RENDERING MOTION TO QUASH SERVICE AND
TO DISMISS MOOT

DAVID O. CARTER, District Judge.

**\*1** Before the Court is Plaintiffs Monika Standing and
Chris Bristol's Motion to Remand this case to the
Superior Court of the State of California, County of
Orange, pursuant to 🔖 28 U.S.C. § 1447(c) on the basis
that the Court lacks subject matter jurisdiction (the
"Motion"). After considering the moving, opposing, and
replying papers, and for the reasons stated below, the
Court hereby GRANTS the Motion. As a result, the Court
renders Defendants' Motion to Quash Service and to
Dismiss filed with the Court on March 11, 2009, MOOT.

**I. BACKGROUND**
This is an action for the wrongful death of decedent,
Nicole Bristol, who died on February 9, 2008, from using
an allegedly defective 75 mcg/hour fentanyl patch. An
autopsy revealed that the concentration of fentanyl in
Nicole's blood was toxic, nearly nine times higher than it
should have been if the patch was properly functioning.
Plaintiffs are Nicole's parents. Plaintiff Monika Standing,
Nicole's mother and a citizen of Colorado, brought suit
against Watson Laboratories, Inc., Watson
Pharmaceuticals, Inc., and Watson Pharma, Inc.
(collectively, the "Watson Defendants") on January 21,

Exhibit 13
Page 1 of 7

2009, in California state court, alleging strict products liability, negligence in the design, manufacture, and marketing of the fentanyl patches, and breach of warranty. Plaintiff Standing alleges that the Watson Defendants designed, manufactured, and marketed the patches that were used by her daughter. (complaint, ¶¶ 6,7).

Watson Pharma, Inc., a citizen of Delaware and New Jersey, removed this action to federal court only one day later on January 22, 2009, prior to service of the complaint on any of the defendants. Watson Pharmaceuticals and Watson Laboratories are both citizens of Nevada and California. Watson Pharma and Watson Laboratories are both subsidiaries of the parent company Watson Pharmaceuticals. In its Notice of Removal, Watson Pharma states that removal is proper under 28 U.S.C. § 1441(b) despite the presence of forum defendants in the action because none of the forum defendants (i.e. Watson Pharmaceuticals and Watson Laboratories) had been served with the complaint prior to removal (Notice of Removal, ¶ 16).

On February 6, 2009, Plaintiff Monika Standing filed a First Amended Complaint ("FAC") adding decedent Nicole Bristol's father and California citizen, Christopher Bristol, as an additional plaintiff. On February 19, 2009, Plaintiffs claim to have effectuated service of the FAC on all three entities,[1] though Defendants contest such service, claiming that the FAC is not the controlling pleading in this action.[2] Plaintiffs brought the instant Motion to Remand on the same day. Plaintiffs argue that removal under Section 1441(b) was improper, and the forum defendant rule should still apply to prohibit removal. Even though no forum defendants were yet served, Plaintiffs contend that the Court should not adopt a literal interpretation of Section 1441(b) that allows removal in these circumstances where Plaintiffs have not yet served anyone. Further, Plaintiffs point out that due to the addition of Plaintiff Bristol, there is no longer complete diversity between the parties. Defendants counter that the Court should adopt a plain meaning interpretation of Section 1441(b) and allow removal even if Plaintiffs have not yet served any defendants. Defendants further argue that the forum defendants here were fraudulently joined to the action. Defendants also claim that Plaintiff Bristol was not properly joined to this litigation, and thus his citizenship should be disregarded.

## II. LEGAL STANDARD

**\*2** Remand may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c). Removal of state actions is allowed only if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441. "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.), Inc.,* 167 F.3d 1261, 1265 (9th Cir.1999) (overruled on other grounds); *see Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992).

Further, a court does not consider the citizenship of a "fraudulently joined" defendant when determining whether complete diversity exists such that removal is proper pursuant to 28 U.S.C. § 1441(b). *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001); *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998). A defendant is "fraudulently joined" when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris,* 236 F.3d at 1067 (quoting *McCabe v. Gen. Foods Corp.,* 811 F.2d 1136, 1339 (9th Cir.1987). The removing defendant may submit facts showing that a resident defendant has no real connection with the action. *Ritchey,* 139 F.3d at 1319.

## III. DISCUSSION

Though the parties dispute whether Christopher Bristol was properly joined in the action and thus destroyed complete diversity, the Court need not reach that issue. For the same reasons as identified in this Court's order remanding a related case, *Kazim Mohammed, et al. v. Watson Pharmaceuticals, Inc., et al.,* SACV 09-0079 DOC (Anx), the Court finds that removal was not proper in the first instance. The Court reiterates that reasoning here and accordingly remands.

### A. "[A]nd served" Requirement under section 1441(b).

Neither party contests that this action (at the time of removal and prior to the addition of Plaintiff Bristol) could have originally been filed in federal court pursuant to 28 U.S.C. § 1332, as the amount in controversy

Exhibit 13
Page 2 of 7

2009 WL 842211

exceeds $75,000, and the action is between citizens of different states. However, even if such diversity jurisdiction is present, 28 U.S.C. § 1441(b) prohibits removal if one or more of the named defendants is a citizen of the forum state, California in the instant action. The statute states, in pertinent part, that a case can be removed based on diversity jurisdiction "only if none of the parties in interest properly joined *and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added); *see also* Lively v. Wild Oats Mkts., 456 F.3d 933, 939 (9th Cir.2006). Known as the "forum defendant rule," the parties dispute how it applies (or should apply) to the instant case.

Plaintiffs bring their motion, in part, based on the "and served" language in 28 U.S.C. § 1441(b), claiming that the forum defendant rule should still apply to prohibit removal here. It is undisputed that Watson Pharma, the only non-forum defendant, removed the action prior to any defendant receiving service of process. Indeed, the complaint was filed on January 21, 2009. Defendant Watson Pharma removed the case to this Court only one day later on January 22, 2009. Plaintiffs allege that they effectuated service of process simultaneously on all defendants on February19, 2009, though Defendants contest this service by arguing that the FAC is not the controlling pleading. On the same day, Plaintiffs brought their Motion to Remand.

**\*3** As Plaintiffs point out, the Watson Defendants argue that the plain language of the "joined and served" provision allows for removal in these circumstances. However, Plaintiffs indicate that federal district courts are split on the proper interpretation of the "and served" language. While many courts adhere to the plain language argument as advanced by the Watson Defendants, others hold that a literal interpretation of the provision runs contrary to congressional intent and the purpose behind the forum defendant rule. The Ninth Circuit has yet to address the issue.

Recognizing the district court split and the lack of binding authority on this Court, the Court proceeds to depart from a literal interpretation of Section 1441(b), reasoning that such an interpretation in these circumstances thwarts the purpose of Section 1441(b) and merely promotes gamesmanship on the part of removing defendants. In so finding, the Court agrees with district courts that have found Section 1441(b) is not implicated where the non-forum defendant (or forum defendant) seeks to remove the action prior to the service of any defendant.

*See e.g.* Holmstrom v. Harad, No. 05 C 2714, 2005 WL 1950672, at *2 (N.D.Ill. Aug.11, 2005) (finding that "the policy of the 'joined and served' requirement is not implicated in this situation.... When no defendant has been served, however, the non-forum defendant stands on equal footing as the forum defendant.... [T]he protection afforded by the 'joined and served' requirement is wholly unnecessary for an unserved non-forum defendant."); *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.,* No. Civ. A. 3:97-CV-0945-P, 1998 WL 119528, at *3, n. 3 (N.D.Tex. March 5, 2008); *Sullivan v. Novartis Pharmaceuticals Corp.,* 575 F.Supp.2d 640, 646 (D.N.J.2008); *Oxendine v. Merck and Co., Inc.,* 236 F.Supp.2d 517, 524-5 (D.Md.2002); *Vivas v. Boeing Co.,* 486 F.Supp.2d 726, 734-5 (N.D.Ill.2007).

The purpose behind the forum defendant rule and its resulting limit on removal relates to the rationale for diversity jurisdiction. As the Ninth Circuit has stated, "Removal based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court.... The need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought. Within this contextual framework, the forum defendant rule allows the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court." Lively, 456 F.3d at 940. Thus, the overarching purpose of the forum defendant rule is to prevent certain cases properly brought in state court from ending up in federal court.

As the *Sullivan* Court noted, the "properly joined and served" language of the forum defendant rule was not originally part of the statutory text but was added through amendment in 1948. *Sullivan,* 575 F.Supp.2d at 644. Despite a thorough search of the legislative history, the *Sullivan* Court could not find any explicit discussion of the purpose for the added language. *Id.* Despite the congressional silence, the *Sullivan* Court reasoned that "the purpose of the 'properly joined and served' requirement of section 1441(b) is abundantly clear in light of the historical development of the policy of the remand provisions, the practical application of the 'joined and served' provision by district courts in recent decades, and common sense." *Id.* That apparent purpose, as identified by the *Sullivan* Court and many other district courts, is to prevent plaintiffs from improperly joining forum defendants that they do not actually intend to pursue in order to prevent removal from state court under Section 1441(b), a pervasive problem at the time of the amendment. *Id.* at 645; *see also* *Stan Winston Creatures, Inc. v. Toys R Us, Inc.,* 314 F.Supp.2d 177,

Exhibit 13
Page 3 of 7

181 (S.D.N.Y.2003) ("The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve."); *Brown v. Organon USA Inc.,* No. Civ. A. 07-3092(HAA), Civ. A. 07-5253(HAA), Civ. A. 07-5916 (HAA), 2008 WL 2625355, at *7 (D.N.J. June 27, 2008); *Allen v. GlaxoSmithKline PLC,* No. 07-5045, 2008 WL 2247067, at *6 (E.D.Pa. May 30, 2008); *DeAngelo-Shuayto v. Organon USA Inc.,* No. 07-2923, 2007 WL 4365311, at * 1; *In re Aredia and Zometa Products Liability Litigation,* No. 3:06-MD-1760, 2007 WL 2905247, at *2 (M.D.Tenn. Oct.3, 2007); *Vivas v. Boeing Co.,* 486 F.Supp.2d at 734. Thus, the "joined and served" language was meant to prevent plaintiffs from improperly exploiting the limits on removal as generally provided for under the forum defendant rule.

**\*4** The Court agrees with Plaintiffs that if the purpose behind the statute is to prevent procedural gamesmanship by plaintiffs through improper joinder, a literal interpretation of the "joined and served" provision that promotes such gamesmanship by defendants through allowing removal before a plaintiff has a meaningful chance to serve any defendant both undermines the general purpose of the forum defendant rule (i.e. to keep certain cases in state court) and inappropriately prevents plaintiffs from litigating in the forum of their choice. *See* *Oxendine,* 236 F.Supp.2d at 524 ("removability can not rationally turn on the timing or sequence of service of process"); *Vivas,* 486 F.Supp.2d at 734 ("[T]o allow a resident defendant to remove a case before a plaintiff even has a chance to serve him would provide a vehicle for defendants to manipulate the operation of the removal statutes. Allowing either party to do that would be against what the courts have long understood to be Congress's intent."); *Brown v. Organon Int'l. Inc., et al.,* Nos. 07-3092(HAA), 07-3456(HAA), 08-2021(HAA), 2008 WL 2833294, at *4 (D.N.J. July 21, 2008) (holding that a literal interpretation of Section 1441(b) promotes defendant gamesmanship by "allow[ing] defendants to avoid the imposition of the forum defendant rule as long as they are monitoring state dockets and avoiding service"); *Sullivan,* 575 F.Supp.2d at 647 ("[G]iven that the purpose of the 'properly joined and served' language is to prevent one form of gamesmanship-improper joinder-the Court finds that allowing defendant to engage another type of gamesmanship-a hasty filing of a notice of removal-is demonstrably at odds with Congressional intent.").

In such circumstances, the Court is allowed to depart from the plain meaning of the statute, as many district courts have done in interpreting the same statutory provision:

> When the meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.

*U.S. v. Am. Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

At a minimum, this Court finds that a plain meaning interpretation of the statute produces unreasonable results at variance with the policy of the legislation as a whole. The purpose of the statute is to prevent gamesmanship by plaintiffs and should not allow for a similar gamesmanship by defendants. Further, as stated above, "[t]he result of blindly applying the plain 'properly joined and served' language of section 1441(b) is to eviscerate the purpose of the forum defendant rule," as defendants could effectively always prevent imposition of the forum defendant rule by monitoring state dockets and removing an action before a plaintiff can serve any party. *Sullivan,* 575 F.Supp.2d at 646-7.

**\*5** Further, to the extent Defendants suggest, through their reliance on *Gecht,* that if Congress had wanted to prevent removal in these circumstances, it could have so stated and thus the plain language interpretation should hold, this Court rejects such an argument for the same reasons articulated by the *Sullivan* Court. In *Gecht,* a Northern District of California Court rejected any argument that the purpose of the statute should prevent removal by a defendant when the plaintiff has not had a meaningful opportunity to serve any defendant:

> [I]f Congress had wanted to ensure that removal would not be appropriate until it was clear that Plaintiff was trying to prevent removal by speciously naming resident defendants, Congress could have provided that no removal petition could be filed until one or more nonresident defendant had been joined and served. The statute also could have been written to give a plaintiff, e.g.

Exhibit 13
Page 4 of 7

2009 WL 842211

30 or 60 days to effect service before permitting a defendant to remove.

*City of Ann Arbor Employees' Retirement System v. Gecht,* No. C-06-7453 EMC, 2007 WL 760568, at *9 (N.D.Cal. March 9, 2007). However, as the Sullivan Court astutely points out, a Congress sitting in the 1940s could not have adequately had these concerns in mind:

> Congress could not have anticipated the tremendous loophole that would one day manifest from technology enabling forum defendants to circumvent the forum defendant rule by, inter alia, electronically monitoring the state court dockets. Thus, Congress would have had no thought to wording the statute with this modern problem in mind.

*Sullivan,* 575 F.Supp.2d at 645. Following this logic, the Court agrees that a literal interpretation of Section 1441(b) disrupts the policy behind the forum defendant rule. Thus, in line with *Holstrom* and district courts following it, the Court finds that removal under Section 1441(b) by a non-forum defendant where no defendants have yet been served is improper because it promotes gamesmanship by defendants and likely deprives plaintiffs of a meaningful opportunity to effectuate service. As a result, the "joined and served" requirements of Section 1441(b) are not implicated by the facts of the instant case where none of the Watson Defendants had been served prior to removal, and pursuant to *Holstrom,* removal was improper at this stage. The Court considers that its outcome here is also in line with Ninth Circuit precedent recognizing that statutory procedures for removal are to be strictly construed against removal and that there is a strong presumption against removal. *Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 685 (9th Cir.2006); *Gaus,* 980 F.2d at 566.

**B. Fraudulent Joinder**

Defendants argue, in the alternative, that the forum defendants Watson Pharmaceuticals and Watson Laboratories are fraudulently joined parties, implicating the "properly joined" language of Section 1441(b). As a result, this Court should disregard their citizenship for diversity purposes and removal regardless of the "and served" language. However, for the following reasons, the Court rejects such an argument.

*6 Plaintiffs first contend that the Watson Defendants waived the right to argue fraudulent joinder because Watson Pharma's Notice of Removal did not explicitly identify fraudulent joinder as a basis for removal. Instead, Watson Pharma indicated that removal was proper under Section 1441(b) because no forum defendant had yet been served with the complaint. Noting that removal must take place within 30 days of receipt of the complaint, 28 U.S.C. § 1446(b), Plaintiffs point out that any amendment to the Notice of Removal can be made after the 30-day clock has run only if the amendment corrects defective allegations of jurisdiction; amendments after 30 days cannot add a new substantive basis for removal. *ARCO Envtl. Remediation, L.L.C. v Dep't of Health and Envtl. Quality,* 213 F.3d 1108, 1117 (9th Cir.2000). A number of district courts have found that allegations of fraudulent joinder constitute a new substantive basis for removal and must be raised before the 30-day window expires. *See Tincher v. Ins. Co. of State of Penn.,* 268 F.Supp.2d 666, 667-8 (E.D.Va.2003); *Dean Witter Reynolds, Inc. v. Swett & Crawford,* No. C-92-3841-JPV, 1992 U.S. Dist. LEXIS 20093, at *2-3 (N.D.Cal. Dec. 23, 1992); *Cohen v. GTE Gov't Syss. Corp.,* No C-92-20783, 1993 U.S. Dist. LEXIS 7914, at *4-5 (N.D.Cal. Apr. 6, 1993). Plaintiffs do not make it clear if they are suggesting that the 30-day time frame should run from the date Watson Pharma removed (January 22, 2009) or from the date Plaintiffs served all three Defendants (February 19, 2009). Defendants raised their fraudulent joinder arguments on March 16, 2009. This date is 30 days past the removal but not 30 days past the alleged service of process that the Defendants contest. Thus, the Court finds it unclear whether the 30 day clock has actually expired.

Yet, regardless of the waiver issue, the Court finds that the Watson Defendants have not met their heavy burden of demonstrating that Watson Laboratories and Watson Pharmaceuticals were fraudulently joined. A party is only deemed to have been "joined 'fraudulently'" if after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Kalawe v. KFC Nat. Mgmt.*

Exhibit 13
Page 5 of 7

*Co.,* Civ. No. 90-007799, 1991 WL 338566, at *2 (D.Hawai'i July 16, 1991) (*citing Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 (9th Cir.1989). Further, " 'district courts must not 'pretry' substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent.' *Green v. Amerada Hess Corp.,* 707 F.2d 201, 204 (5th Cir.1983) (*quoting B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 546 (5th Cir.1981)). "The question is simply whether there is any possibility that plaintiff will be able to establish liability against the party in question." *Briano v. Conseco Life Ins. Co.,* 126 F.Supp.2d 1293, 1296 (C.D.Cal.2000). "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party must meet a heavy burden of persuasion." *Plute v. Roadway Package System, Inc.,* 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001) (*citing Nishimoto v. Federman-Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir.1990) and *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988).

**\*7** Defendants contend that Plaintiffs have no viable claims against Watson Laboratories because the Watson Laboratories based out of Corona, California is not the Watson Pharmaceutical's subsidiary that manufactured fentanyl patches. Instead, Defendants allege that the Watson Laboratories based out of Utah is the actual subsidiary that manufactures fentanyl patches. However, Plaintiffs present evidence suggesting that the Corona-based Watson Laboratories was in fact involved in the manufacturing of the fentanyl patches. Plaintiffs provide the Court with a copy of the "Full Prescribing Information" that accompanies every box of 100 mcg/hr fentanyl patches obtained from Watson Pharmaceuticals' website that states the patches are "Manufactured by: Watson Laboratories, Inc., Corona, CA 92880 USA." Dec. of James Craig Orr, Jr. in Sup. of Reply ("Orr Dec."), ¶ 2, Exh. A. Plaintiffs also provide a snapshot from the Watson Pharmaceuticals' website of the packaging of a 75 mcg/hr fentanyl patch that includes the text "Watson Laboratories, Inc. Corona, CA 92880 USA." *Id.* at ¶ 3, Exh. B. This evidence at least suggests that the Watson Laboratories based out of Corona, California and named as a defendant in the instant action participates in the manufacturing of fentanyl patches. Thus, Plaintiffs have the possibility of recovering against the forum defendant Watson Laboratories for strict products liability, negligence, and/or breach of warranty.

Defendants also argue that any alleged liability on behalf of Watson Pharma (the entity that they concede sells and distributes fentanyl patches) cannot be attributed to the parent company Watson Pharmaceuticals, citing the general rule that the existence of a parent-subsidiary relationship alone is not enough to attribute the liability of the subsidiary to the parent. *Doe v. Unocal Corp.,* 248 F.3d 915, 925-6 (9th Cir.2001). Defendants contend that Watson Pharmaceuticals does not design, manufacture, market, or distribute fentanyl patches, but provide no evidence regarding the nature of its relationship with Watson Pharma. As Plaintiffs point out, the general rule identified by Defendants is subject to exceptions when the parent company asserts extensive control over its subsidiary, has a principal/agent relationship with its subsidiary, or when the subsidiary performs services sufficiently important to the parent such that the parent would perform them in the subsidiaries absence. *See Bowoto v. Chevron Texaco Corp.,* 312F.Supp.2d 1229, 1235-6 (N.D.Cal.2004); *E. & J. Gallo Winery v. EnCana Energy Servs.,* No. CV F 03-5412 AWI LJO, 2008 WL 2220396, at *11 (E.D.Cal. May 27, 2008); *Unocal Corp.,* 248 F.3d at 926, 928. With virtually no evidence presented by Defendants, Plaintiffs present evidence that suggests Watson Pharmaceuticals is in fact involved in the manufacture, marketing, and/or distribution of fentanyl patches or at least might have a closer relationship with its subsidiaries than it contends. For example, on its website, Watson Pharmaceuticals identifies itself as "a leading specialty pharmaceutical company that develops, manufactures, markets, sells and distributes brand and generic pharmaceutical products." Orr Dec., ¶ 5, Exh. D. Further, fentanyl patches are listed in Watson Pharmaceuticals' online "Product Database." *Id.* at ¶ 6, Exh. E. Watson Pharmaceuticals also was the entity that recalled a number of defective fentanyl patches on August 8, 2008. *Id.* at ¶ 7, Exh. F. Thus, considering the strong presumption against finding fraudulent joinder, the Court cannot conclude that there is no possibility Plaintiffs could recover from forum defendant Watson Pharmaceuticals. As a result, fraudulent joinder cannot form a basis for this Court to deny remand.

### IV. DISPOSITION

**\*8** For the foregoing reasons, the Court hereby GRANTS the Motion to Remand. As a result, the Court renders MOOT Defendants' Motion to Quash Service of Summons and to Dismiss.

IT IS SO ORDERED.

**All Citations**

Exhibit 13
Page 6 of 7

2009 WL 842211

Not Reported in F.Supp.2d, 2009 WL 842211

## Footnotes

1    Due to the interrelationship between the defendants, the Court notes that service (if effective) on all three, forum and non-forum, occurs simultaneously because the agent for service of process of each corporation is the same woman, Margaret Wilson. See Docket Nos. 30, 31, and 32.

2    Defendants brought a Motion to Quash Service and to Dismiss on March 11, 2009.

---

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.    7

Exhibit 13
Page 7 of 7

2020 WL 5898779
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

WELLS FARGO BANK, N.A., Plaintiff(s),
v.
OLD REPUBLIC TITLE INSURANCE GROUP,
INC., et al., Defendant(s).

Case No. 2:20-CV-1461 JCM (NJK)
|
Signed 10/05/2020

**Attorneys and Law Firms**

Darren T. Brenner, Lindsay Robbins, Wright, Finlay &
Zak, LLP, Las Vegas, NV, for Plaintiff(s).

Sophia Shunwan Lau, Early Sullivan Wright Gizer &
McRae LLP, Las Vegas, NV, Kevin Samuel Sinclair,
Sinclair Braun LLP, Encino, CA, for Defendant(s).

ORDER

James C. Mahan, UNITED STATES DISTRICT JUDGE

**\*1** Presently before the court is plaintiff Wells Fargo
Bank, N.A., as Trustee, on Behalf of the Holders of the
Harborview Mortgage Loan Trust Mortgage Loan
Pass-Through Certificates, Series 2006-12's ("Wells
Fargo") motions to remand, (ECF No. 10), and for
attorneys' fees, (ECF No. 11). Defendant Old Republic
National Title Insurance Company ("Old Republic") filed
a response, (ECF No. 18), to which plaintiff replied (ECF
No. 25).

**I. Background**
The instant action arises from a real property and
insurance dispute. On August 5, 2020, plaintiff Wells
Fargo filed its complaint in Nevada state court. (ECF No.
1). Just one day after the case was filed—before any

defendants were served—Old Republic removed the case
to this court. (*Id.*). Wells Fargo now moves to remand.
(ECF No. 10).

**II. Legal Standard**
" 'Federal courts are courts of limited jurisdiction,'
possessing 'only that power authorized by Constitution
and statute.' " *Gunn v. Minton*, 568 U.S. 251, 256
(2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of
America*, 511 U.S. 375, 377 (1994)). Pursuant to 28
U.S.C. § 1441(a), "any civil action brought in a State
court of which the district courts of the United States have
original jurisdiction, may be removed by the defendant or
the defendants, to the district court of the United States
for the district and division embracing the place where
such action is pending." 28 U.S.C. § 1441(a). "A
federal court is presumed to lack jurisdiction in a
particular case unless the contrary affirmatively appears."
*Stock West, Inc. v. Confederated Tribes of Colville
Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Upon notice of removability, a defendant has thirty days
to remove a case to federal court once he knows or should
have known that the case was removable. *Durham v.
Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir.
2006) (citing 28 U.S.C. § 1446(b)(2)). Defendants are not
charged with notice of removability "until they've
received a paper that gives them enough information to
remove." *Id.* at 1251.

For diversity jurisdiction under 28 U.S.C. § 1332, the
parties must be completely diverse and the amount in
controversy must exceed $75,000.00, exclusive of interest
and costs. *See* 28 U.S.C. § 1332(a); *Matheson v.
Progressive Specialty Ins. Co.*, 319 F.3d 1098 (9th Cir.
2003). A removing defendant has the burden to prove by
a preponderance of the evidence that the jurisdictional
amount is met. *See* *Sanchez v. Monumental Life Ins.
Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996). Removal
based on diversity is subject to the forum defendant rule:
"[a] civil action otherwise removable solely on the basis
of the jurisdiction under section 1332(a) of this title
may not be removed if any of the parties in interest
properly joined and served as defendants is a citizen of
the [s]tate in which such action is brought." 28 U.S.C.
§ 1441(b)(2).

Exhibit 14
Page 1 of 4

2020 WL 5898779

Specifically, "the 'thirty day time period [for removal] ... starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Id.* at 1250 (quoting *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 690–91 (9th Cir. 2005) (alterations in original)). "Otherwise, the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable. *Id.* (quoting 28 U.S.C. § 1446(b)(3)).

**\*2** A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

## III. Discussion

### A. Motion to Remand

Plaintiff Wells Fargo contends that removal was defective because *no* defendants were served. (ECF No. 10). This court agrees. As plaintiff notes, this matter tracks closely with this court's prior ruling in *Carrington Mortgage Services, LLC v. Ticor Title of Nevada*, 2020 WL 3892786, 2:20-cv-699-JCM-NJK (D. Nev. 2020). There, removal also occurred before any defendants were served. Defendant responds that, in light of this matter's additional briefing, this court should reject its prior reasoning in favor of Fifth Circuit precedent. *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000); *see also Construction Company v. Nexus Gas Transmission*, LLC. 2020 WL 3962247 at \*4 (S.D. Texas 2020). Defendant also lays out plaintiff's apparent change in litigation strategy which has spawned this issue. (ECF No. 18). This court is unpersuaded that it should depart from its prior reasoning in *Carrington*. 2020 WL 3892786.

The forum defendant rule expressly prohibits removal based on diversity jurisdiction in cases where "any of the parties in interest properly joined and served as

defendants is a citizen of the [s]tate in which [the] action is brought." 28 U.S.C. § 1441(b)(2); *see also Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) ("Separate and apart from the statute conferring diversity jurisdiction, 28 U.S.C. § 1332, § 1441(b) confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state.").

Here, the parties agree that defendant Old Republic of Nevada is a Nevada corporation and, therefore, a forum defendant. Old Republic argues that its removal properly evades the forum defendant rule, because the forum defendant had not yet been served. Indeed, *none* of the defendants were served. This court stands by its prior reasoning:

> In particular, the use of the word "any" in "any parties in interest properly joined and served" necessarily mean[s] "that the statute assumes at least one party has been served; ignoring that assumption would render a court's analysis under the exception nonsensical and the statute's use of 'any' superfluous." Thus, under the plain language of the statute, "the lack of a party properly joined and served does not mean an 'exception' to removal is inapplicable, but rather means that an even more basic assumption embedded in the statute—that a party in interest had been served prior to removal—has not been met."

*Carrington*, 2020 WL 3892786, at \*3. Defendant's removal was procedurally defective because Old Republic removed this action before any defendants were served. *See id.*; *see also Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316 (D. Mass. 2013); *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361 (N.D. Ga. 2011).

Accordingly, remand is appropriate unless Old Republic of Nevada, the forum defendant, was fraudulently joined. Old Republic argues that Old Republic of Nevada, which acted "[a]s the title agent and the express agent of a disclosed principal," was fraudulently joined to improperly thwart removal. (ECF No. 18).

**\*3** "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citations omitted). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe*, 811 F.2d at 1339; *see also Ritchey*, 139 F.3d at 1318 ("[A]

Exhibit 14
Page 2 of 4

2020 WL 5898779

defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory."). Conversely, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *GranCare, LLC*, 889 F.3d at 548. "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). The Ninth Circuit has "made it clear that the party invoking federal court jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against fraudulent joinder.' " *Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (quoting *Hunter*, 582 F.3d at 1046).

Here, Old Republic argues that Wells Fargo failed to allege claims against Old Republic of Nevada as a "title agent," under NRS 692A.060, as opposed to a "title insurer," under NRS 692A.070. (ECF No. 18). Thus, Old Republic of Nevada is not a party to the insurance contract, owed no contractual duties to Wells Fargo, and therefore cannot be held liable on any of Wells Fargo's claims. However, Wells Fargo responds that (1) "Old Republic Nevada acted as more than an insurance agent"; (2) "even if Old Republic Nevada was just an agent, as this court held in Carrington, an agent can still be liable under Nevada law"; (3) "Wells Fargo pled a valid claim for alter-ego lability"; and (4) "the statute of limitations—which was not even raised in the petition for removal—is not applicable here." (ECF No. 25).

As this court found in *Carrington*, 2020 WL 3892786, defendant Old Republic has not borne its "heavy burden" to show, by clear and convincing evidence, that a Nevada state court would find that plaintiff Wells Fargo's has failed to state a cause of action against Old Republic of Nevada. Indeed, the complaint alleges, and the record supports, the notion that Old Republic of Nevada acted as "far more than an agent in this case—it issued and executed the subject policy." (ECF No. 25; *see also* ECF No. 1). Additionally, plaintiff has pleaded facts regarding alter ego between Old Republic and Old Republic of Nevada which further bolsters its position that they are properly joined. (ECF No. 1). "In assessing whether a defendant was fraudulently joined, the court need not look extensively at the merits of the claims." *Milligan v. Wal-Mart Stores, Inc.*, No. 2:14-CV-1739 JCM CWH, 2014 WL 7240162, at *3 (D. Nev. Dec. 18, 2014) (citation omitted). The court finds that the state court could *possibly* find that the complaint states a cause of action against Old Republic of Nevada.

Accordingly, the court finds that Old Republic of Nevada is not fraudulently joined and, as a result, defeats diversity jurisdiction under the forum defendant rule. This court grants plaintiff's motion to remand.

### B. Motion for Attorney's Fees
Under the "American rule," litigants generally must pay their own attorneys' fees in the absence of a rule, statute, or contract authorizing such an award. *See Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). One such statute is 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Under this provision, the decision whether to award attorney's fees "is left to the district court's discretion, with no heavy congressional thumb on either side of the scales." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005).

**\*4** That is not to say the courts' discretion is unlimited. *See id.* at 139–140 ("Discretion is not whim," but should be "guided by sound legal principles."). The Supreme Court has held that "absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* While the Supreme Court has not defined what makes removal objectively unreasonable, the Ninth Circuit has looked to the clarity of the relevant law at the time of removal. *See Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008) ("[T]he test is whether the relevant law clearly foreclosed the defendant's basis of removal.").

The law pertaining to snap removal is unsettled, and defendants sufficiently describe why plaintiff's change in litigation strategy gave rise to their attempt to remove. Thus, the court finds that Chicago Title's removal was reasonable and declines to award Carrington attorneys' fees. Carrington's motion is denied.

In light of the foregoing, the defendants' motions to dismiss are denied as moot. (ECF Nos. 22, 23, 24).

Exhibit 14
Page 3 of 4

2020 WL 5898779

**IV. Conclusion**
Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Wells Fargo's motion to remand (ECF No. 10) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff Wells Fargo's motion for attorneys' fees (ECF No. 11) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Old Republic Title Company of Nevada's motion to dismiss (ECF No. 22) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Old Republic Title Insurance Group, Inc.'s motion to dismiss (ECF No. 23) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Old Republic National Title Insurance Company's motion to dismiss (ECF No. 24) be, and the same hereby is, DENIED as moot.

**All Citations**

Slip Copy, 2020 WL 5898779

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 14
Page 4 of 4